633 So.2d 1038 (1994)
In the Matter of the CONSERVATORSHIP OF Frances W. MATHEWS. (Two Cases)
Dan MATHEWS
v.
Jesse L. WILLIAMS.
Nos. 91-CA-00886, 91-CA-00214.
Supreme Court of Mississippi.
March 10, 1994.
Joe B. Moss, Keyes Danks Moss & Leonard, Jackson, James W. Younger, Jr., Clinton, Jack G. Moss, Raymond, for appellant.
Larry D. Allen, Clinton, William W. Ferguson, Raymond, for appellee.
Before HAWKINS, C.J., and SULLIVAN and SMITH, JJ.
HAWKINS, Chief Justice, for the Court:
Dan Mathews has appealed the order of the chancery court of the second judicial district of Hinds County removing him as conservator of the estate of Frances W. Mathews and awarding attorneys' fees to petitioner's counsel.
We affirm his removal, remand for proceedings, and reverse the award of attorneys' fees.

FACTS
Andrew Mathews died December 23, 1985. His sole heir is his widow, Frances W. Mathews. Mrs. Mathews was advanced in age, and on November 19, 1986, pursuant to a petition filed by her, and her husband's nephews Joe P. and Dan Mathews, a decree was entered by the chancery court of the second judicial district of Hinds County appointing Dan conservator. Letters issued November 21. At the time, Mrs. Mathews was living in her home out from Utica, and she had a personal estate of approximately $160,000 and owned approximately 360 acres of land.
On June 1, 1988, Jesse L. Williams, Jr., a nephew of Mrs. Mathews, filed a motion to remove Dan, which the chancellor denied by order on October 18, 1988, when he required Dan to file an amended first annual account and inventory contemporaneously with his second annual accounting. On July 16, 1990, Williams again moved to remove Dan as conservator. Following a hearing on November 26, 1990, the chancellor entered an order removing Dan as conservator. He overruled Dan's motions to reconsider, and on August 20, 1991, entered an order awarding attorneys' fees to Williams' attorneys in the amount of $1,425 to William W. Ferguson and $1,275 to Larry D. Allen, to be paid by the estate.
Dan has appealed his removal as conservator and the award of attorneys' fees to Williams' attorneys.

*1039 LAW

A chancery court-appointed conservator has the "same duties, powers and responsibilities as a guardian of a minor, and all laws relative to the guardianship of a minor shall be applicable to a conservator." Miss. Code Ann. § 93-13-259 (1972).

I. INVENTORY
Miss. Code Ann. § 93-13-33 (1972) states:

Every guardian shall, within three months after his appointment, return to the court, under oath, a true and perfect inventory of the estate, real and personal, and of all money or other things which he may have received as the property of his ward; and he shall return additional inventories of whatever he may subsequently receive. And he shall annually return an inventory, under oath, of the increase of the estate, if there be any. A guardian who shall fail to return inventories may be removed and his bond put in suit, unless he can show cause for the default. (Emphasis added)
The first inventory was not filed until February 23, 1988, a year and two months following Dan's appointment. It did not mention bonds owned by the estate. The third inventory filed May 13, 1990, purporting to show the inventory of the estate as of December 31, 1989, lists "Series E. Bonds $2,063.22."
The bonds were first identified by serial number and date of purchase in the fourth inventory showing assets as of December 18, 1990, and filed January 7, 1991, which states: "Series E Bonds (all $25.00/7 year Bonds)," and then lists twenty-seven bonds by serial number and showing dates of purchase from July 1966 through July 1969. Subsequent inventories were not timely filed, and no reason was given therefor. There is no explanation for failure to include the bonds.

II. ANNUAL ACCOUNTS
The annual accounts required by Miss. Code Ann. § 93-13-67 (1974) were not timely filed, and no reason was offered therefor.[1]

III. EXPENDITURES WITHOUT COURT APPROVAL
Much more serious is the failure of Dan to seek court approval prior to making expenditures. Section 93-13-38 (1993) provides:
It shall be the duty of the guardian ... to improve the estate committed to his charge, and to apply so much of the income, profit or body thereof as may be necessary for the comfortable maintenance and support of the ward and of his family, if he have any, after obtaining an order of the court fixing the amount. ... The guardian is empowered to collect and sue for and recover all debts due his said ward ... (Emphasis added)
This statute requires that a court order fixing the amount to be spent for the care and maintenance of the ward be obtained prior to making such expenditures. Dan simply made the expenditures as he saw fit. When this Court addressed such action in Welch v. Childers, 195 Miss. 415, 420, 15 So.2d 690, 691 (1943), we held:
A minor under guardianship is a ward of the Chancery Court. All receipts and disbursements of his estate are required to be under the authority and direction of the Chancery Court or the Chancellor in vacation. The expenses for the maintenance and support of the ward cannot be proved in any other way. The object of the law is to guard against dishonesty and mismanagement of the estate by the guardian... . *1040 The law does not leave the amount of the expenditures by the guardian for the maintenance, support and education to (the guardian's) discretion. The sum must be fixed by the court. If the guardian contracts therefor without the sanction of the Chancery Court or Chancellor, the liability therefor is personal to him, and he cannot be allowed for it in his accounts for the ward. The guardian has no power to bind the estate of his ward without the sanction of the Chancery Court or the Chancellor.
That prior court approval is absolutely required by statute before a conservator makes expenditures seems never to have occurred to counsel representing Dan or the chancellor who then examined and approved them. Expenditures for the care and maintenance of Mrs. Mathews and her property were made by Dan as though he had some blanket power of attorney to spend as he thought best, and only then report it to a chancellor. No explanation was offered to the chancellor for all these expenditures having been made without court approval, nor did the chancellor require one. This is of profound concern to this Court. We again remind attorneys for estates of wards and decedents and the chancellors who examine accounts and inventories that they, too, have special and far-reaching fiduciary duties. It was the obligation of the attorney to advise the conservator as to his statutory duties, responsibilities, and limitations on expenditures. As for chancellors, a chancellor who must approve accounts and inventories has a duty beyond deciding lawsuits. He is under an obligation first to see that accounts and inventories filed comply with the statutes before he approves them. He is also the "superior guardian" of the ward. This Court long ago in Union Chevrolet Co. v. Arrington, 162 Miss. 816, 826, 827, 138 So. 593, 595 (1932), held:
Infants and persons of unsound mind are disabled under the law to act for themselves. Long ago it became the established rule for the court of chancery to act as the superior guardian for all persons under such disability. This inherent and traditional power and protective duty is made complete and irrefragable by the provisions of our present state constitution. It is not competent for the Legislature to abate the said powers and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court and or the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis. The court will take nothing as confessed against them; will make for them every valuable election; will rescue them from faithless guardians, designing strangers, and even from unnatural parents, and in general will and must take all necessary steps to conserve and protect the best interest of these wards of the court. The court will not and cannot permit the rights of an infant to be prejudiced by an waiver, or omission or neglect or design of a guardian, or of any other person, so far as within the power of the court to prevent or correct. Grif. Chan.Prac. §§ 45, 360, 530, 533. All persons who deal with guardians or with courts in respect to the rights of infants are charged with the knowledge of the above principles, and act to the contrary thereof at their peril. (Emphasis added)
Also, Mississippi State Bar Association v. Moyo, 525 So.2d 1289, 1293 (Miss. 1988).
Solicitors for guardians and conservators and chancellors who must approve their accounts and inventories who ignore these fiduciary responsibilities make a perilous mistake.[2]

IV. INVESTMENTS WITHOUT COURT APPROVAL
Section 93-13-57 Miss. Code Ann. (1972) deals with the method the guardian is to utilize in disposing of surplus money not necessary for the current expenditures for the ward. This section provides in part:

*1041 Whenever the guardian shall have money of his ward not needed for current expenditures, or directed to be invested for the ward, he shall apply to the court, or chancellor in vacation, for direction as to the disposition he shall make of it. The court or chancellor shall determine whether he shall lend it at interest, and upon what security, or how he shall dispose of it. If the court or chancellor designate the person to whom the loan shall be made, or the security on which it shall be made, and the loan to be so made, responsibility shall not attach thereafter to the guardian; but if the court or chancellor shall entrust him with discretion in the matter, he shall be bound for the exercise of sound judgment... . Any guardian who fails to report to the court the fact that he has money of his ward not needed or allowed to be used for current expenditures, and to ask the order of the court as to the disposition of such money, may be chargeable with interest on the same at the rate of eight per centum (8%) per annum during the time of failure. (Emphasis added)
Dan, on behalf of Mrs. Mathews, purchased certificates of deposit, invested in stock, and sold stock, all without prior court approval.
Moreover, we have been unable to trace the certificates of deposit from one accounting period to the next because the numbers identifying them differed. Interest proceeds appear to have been treated inconsistently, some deposited in the ward's checking account, other reinvested. Interest deposited in the checking account identified by certificate of deposit numbers differed from the numbers identifying the certificates in the inventory for that period.
On January 23, 1987, Dan petitioned and on January 26, 1987, received court approval to commence legal action to recover money fraudulently obtained from her. No report was ever made to the court of the outcome of this action.

V. QUESTIONABLE EXPENDITURES
In deciding whether Dan should be removed as conservator, the chancellor also had authority to consider his expenditure, and without prior court approval, of more than $1,800 in repairs on a pickup truck valued at $800, and in an 18-month period following the ward's admittance to the nursing home, $498 for oil, gas and service for the truck. Utilities and household expenses, including a telephone, were kept active after Mrs. Mathews went to a nursing home, and expenditures made, all without court approval. Some vouchers were made to "cash."
We do not have before us and do not address the justification for any expenditures made by Dan as conservator, or their reasonableness or necessity. These may be proper inquiries upon remand. Neville v. Kelso, 247 So.2d 828, 834-835 (Miss. 1971).
The chancellor should also upon remand see that inventories reflect and accurately trace the investment of all funds.
Our sole inquiry on this appeal is whether the chancellor abused his discretion in removing Dan as conservator, and for the reasons set forth she clearly did not. Harris v. King, 480 So.2d 1131, 1132 (Miss. 1985); Conner v. Polk, 161 Miss. 24, 29, 133 So. 604, 605 (1931).

VI. ATTORNEYS FEES
Dan also appealed the award unto Williams' attorneys of fees totaling $2,700. The award of solicitors' fees from the estate of Mrs. Mathews was premature because the sole inquiry at the hearing was whether Dan should be removed as conservator, in which hearing they represented Williams. Miss. Code Ann. § 93-13-257 (1972), provides for attorneys fees to be awarded as part of the costs of establishing a conservatorship. Solicitors' fees are allowed in estates of decedents and wards for reasonable services rendered the estates. U.C.C.R. 6.01; In re Conservatorship of Stallings v. Bush, 523 So.2d 49, 54 (Miss. 1988).
For the reasons stated, we affirm the judgment of the chancery court removing the conservator, and remand for proceedings not inconsistent with this opinion, and reverse and render the award of attorneys' fees.
*1042 AFFIRMED IN PART; REMANDED IN PART; REVERSED AND RENDERED AS TO ATTORNEYS' FEES.
DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.
JAMES L. ROBERTS, Jr., J., not participating.
NOTES
[1] Miss. Code Ann. § 93-13-67 (1993) states:

Except as herein provided, and as provided in section 93-13-7, every guardian shall, at least once in each year, and oftener if required, exhibit his account, showing the receipts of money on account of his ward, and showing the annual product of the estate under his management, and the sale or other disposition thereof, and showing also each item of his expenditure in the maintenance and education of his ward and in the preservation and management of his estate, supported by legal vouchers. ... And such accounts shall be examined, approved, and allowed by the court in the same way that the accounts of executors and administrators are examined, approved, and allowed. Compliance with the duties required, in this section, of guardian shall be enforced by the same means and in the same manner as is provided in respect to the accounts of executors and administrators. (Emphasis added)
[2] We are not comforted by the May 18, 1990, decree approving the third annual account in which the chancellor first authorized the conservator to "pay all future medical, personal, and other expenses for the creature comforts of Frances Mathews." With no representation from Dan as to why any of these expenses might be, the chancellor gave him blanket authorization to expend his estate's funds.