WALLER, Chief Justice,
for the Court:
¶ 1. John Ravenstein appeals the 2012 judgment of the Madison County Chancery Court appointing his ex-wife Elisha Ravenstein Hawkins as conservator for-the couple’s adult son Ryan. John also appeals the chancery court’s denial of his motions for relief from judgment and modification of child support, through which he attempted to terminate his duty to support Ryan financially. We find that the chancellor correctly denied John’s motion for relief from the divorce judgment and motion for modification of child support. But we find that the chancery court applied an incorrect legal standard for appointing a conservator for Ryan. Accordingly, we reverse the chancery court’s appointment of Elisha as Ryan’s conservator and remand for further proceedings.

STATEMENT OF THE CASE

¶ 2. The Madison County Chancery Court granted Elisha Ravenstein Hawkins a divorce from her husband John Raven-stein on March 27, 1998. Elisha was awarded physical and legal custody of the couple’s son Ryan, with liberal visitation awarded to John. At the date of the divorce, Ryan was seven years old. Ryan suffers from serious medical conditions that have rendered him severely mentally and physically disabled. In the divorce decree, after discussing John’s substantial income and Ryan’s unique needs, Chancellor Lutz found that John was capable of paying $1,500 a month in child support. The chancellor then held:
This Court is unable to justify allowing Ryan to become a ward of the state upon reaching his twenty-first birthday when he has parent’s [sic] capable of caring for him. With guidance from Taylor[1] and the other jurisdictions which are noted above, this Court will require John to continue support for *214 Ryan’s life. According to Taylor, any right to receive support is a right which matures into Ryan when he reaches age twenty-one. The Court suggests at age twenty-one the parties follow the proper course of action when dealing with a disabled adult’s estate.
(Emphasis added.) Accordingly, John was ordered to pay $1,500 a month in child support for Ryan’s life, along with Ryan’s health and dental insurance. John and Elisha were ordered to share all uncovered medical expenses and special-equipment expenses equally for Ryan’s life. John filed a Motion for Reconsideration, Clarification, and/or Alternatively, for a New Trial. In his motion, John acknowledged “for the purposes of appeal” that he objected to the court’s award of lifetime child support for Ryan. The chancery court submitted an Amended Final Judgment making minor changes to the initial judgment, but the court did not address John’s argument regarding the legality of mandated lifetime child support. No further motions or appeals were taken, and the parties abided by the chancery court’s judgment without modification for the next thirteen years.
¶ 3. On March 15, 2011, Elisha filed in chancery court a Petition for Appointment of Conservator. Elisha contended that Ryan, who was now twenty years old, was so incapable of managing his own person and estate that it was necessary to have a conservator appointed to have charge of his person and estate. Elisha claimed that she was willing and able to serve as Ryan’s conservator, and that the appointment would be in Ryan’s best interest. John responded by filing his own Petition for Appointment of Conservator, requesting the chancery court to appoint him as Ryan’s conservator. Alternatively, John requested the court to appoint Elisha and himself as coconservators. John also contended that Ryan did not have a separate estate to manage at that time,' but that upon reaching majority, he would require a conservator to manage his financial affairs.
¶ 4. On April 17, 2011, Ryan’s twenty-first birthday, John ceased paying his child-support payments to Elisha and began depositing the funds in the registry of the Madison County Chancery Court. John then filed a motion for relief from the chancery court’s 1998 judgment. John argued that the chancery court’s award of lifetime child support to Ryan was void when rendered and that it was no longer equitable to enforce that provision, since Ryan had reached the age of majority. John claimed that all obligations specified in the court’s 1998 judgment should terminate as a matter of law upon Ryan’s twenty-first birthday. In response, Elisha argued that John’s motion was untimely, as the 1998 judgment was not timely appealed. Elisha also argued that there had been no material change in circumstances, unanticipated at the time of the initial judgment, that would warrant modifying the judgment.
¶ 5. All pleadings and causes concerning the parties were consolidated by order of the Madison County Chancery Court into Cause No. 1996-350, the original divorce action. On February 22, 2012, the parties entered an Agreed Order stipulating the need for a conservator over Ryan’s person. Chancellor Brewer then held a hearing on Elisha’s and John’s petitions to be appointed conservator, along with John’s motion for relief from the 1998 judgment. John’s motion for relief from the judgment was not fully addressed at the hearing, however. Instead, the parties presented witnesses to testify regarding each party’s physical and financial ability to care for Ryan.
¶ 6. On April 18, 2012, the chancery court entered its Opinion and Final Judg *215 ment on the consolidated cases. Chancellor Brewer granted Elisha’s petition to be appointed Ryan’s conservator, denied John’s petition to be appointed Ryan’s conservator, and denied John’s motion for relief from the divorce judgment. The chancellor held that John’s motion for relief was an “untimely attemp[t] to re-litigate matters that were ripe for remedy under the procedural avenues thirteen years ago.” The chancellor also found that Ryan’s twenty-first birthday did not constitute a material change in circumstances warranting modification of the court’s previous award of lifetime child support. Finally, viewing John’s Petition for Appointment of Conservator as a request to modify custody of Ryan, Chancellor Brewer held that John had failed to prove a material change in circumstances warranting modification of the court’s initial grant of custody to Elisha.
¶ 7. John filed a motion for reconsideration and clarification of the court’s judgment on April 25, 2012.The chancellor denied this motion and ordered that any funds deposited in the court registry be released to Elisha. John now appeals to this Court, raising the following issues:
I. Whether the chancery court erred in requiring John to make support payments for the lifetime of his adult child.
II. Whether the chancery court applied the wrong legal standard when determining who would be appointed conservator of Ryan Ravenstein.
III. Whether the chancery court erred in not requiring Elisha to deposit all support paid by John for the benefit of Ryan to a Con-servatorship Account and in not requiring Elisha to file an inventory and accounting of all support funds and to post a bond.
IV. Whether the chancery court erred when it awarded support to Elisha for the benefit of an adult who was not joined as a party to the action.
Following oral argument in this case, this Court requested supplemental briefing from the parties on the following issue:
V. Whether an interpretation that Mississippi Code Sections 93-5-23 and 93-11-65 do not allow the chancellor the discretion or authority to award child support for the support of an adult child who is mentally or physically incapable of self-support after the age of twenty-one years would violate the Equal Protection Clause of the United States Constitution and the corresponding equal protection provision of the Mississippi Constitution. Specifically, whether such an interpretation violates an adult child’s (in this case, Ryan’s) right to equal protection under the law in light of the legislature’s enactment of Mississippi Code Section 43-19-33, which provides that a putative father is not relieved of the duty of support in the case of an adult child who “is mentally or physically incapable of self-support.”

STANDARD OF REVIEW

¶ 8. “This Court has a limited standard of review in examining and considering the decisions of a chancellor.” Ballard v. Commercial Bank of DeKalb, 991 So.2d 1201, 1204-1205 (Miss.2008) (citing McNeil v. Hester, 753 So.2d 1057 (Miss.2000)). This Court will not disturb the findings of the chancellor unless the chancellor was manifestly wrong, clearly *216 erroneous, or applied an erroneous legal standard. Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990). Where the chancellor’s findings are supported by substantial evidence, this Court is without authority to disturb his or her conclusions, although this Court might have found otherwise as an original matter. Dew v. Langford, 666 So.2d 739, 742 (Miss.1995) (citing In re Estate of Harris, 539 So.2d 1040 (Miss.1989)). For questions of law, the standard of review is de novo. Vaughn v. Vaughn, 798 So.2d 431, 434 (Miss.2001).

DISCUSSION

I. Whether the chancery court erred in requiring John to make support payments for the lifetime of his adult child.
¶ 9. John argues that Chancellor Lutz lacked the authority to extend John’s child-support obligation beyond the date that Ryan reached the age of majority, which in Mississippi is twenty-one years old. See Nichols v. Tedder, 547 So.2d 766, 770 (Miss.1989) (“[Tjhis Court holds that twenty-one (21) years is the age of majority in this State for purposes of child care and maintenance orders issued pursuant to [Sections 93-5-23 and 93-11-65 of the Mississippi Code].”). Therefore, John asserts, his legal obligation to support Ryan terminated when Ryan attained the age of twenty-one. Notably, John never appealed Chancellor Lutz’s 1998 judgment. Instead, he waited until Ryan turned twenty-one and then filed a motion for relief from that judgment and a motion for modification of child support. These motions will be addressed separately below.
A. Rule 60(b) motion
¶ 10. Under Rule 60(b) of the Mississippi Rules of Civil Procedure, a court may relieve a party from a “final judgment, order, or proceeding” when “the judgment is void,” when “it is no longer equitable that the judgment should have prospective application,” or for “any other reason justifying relief from the judgment.” Miss. R. Civ. P. 60(b)(4), (5), (6). Rule 60(b) is a “grand reservoir of equitable power to do justice in a particular case” that should be reserved for “extraordinary and compelling circumstances.” Briney v. United States Fid. & Guar. Co., 714 So.2d 962, 966 (Miss.1998). A Rule 60(b) motion should not be used to reliti-gate a case. Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984). A motion made pursuant to Rule 60(b)(4), (5), or (6) must be made “within a reasonable time” after the entry of the judgment. Miss. R. Civ. P. 60(b). What constitutes a reasonable time must be determined on a case-by-case basis. M.A.S. v. Miss. Dep’t of Human Servs., 842 So.2d 527, 530 (Miss.2003) (citatións omitted).
¶ 11. John filed his motion for relief from the chancery court’s 1998 divorce judgment pursuant to Rule 60(b)(4), (5) and (6). The chancellor denied John’s motion as untimely, finding that it had not been brought within a reasonable time after the entry of the divorce judgment. On appeal, John argues that the chancery court had no discretion to deny the relief requested because the provision in the divorce judgment requiring lifetime child support is void. “[M]otions for relief under Rule 60(b) are generally addressed to the sound discretion of the trial court and appellate review is limited to whether that discretion has been abused.” Stringfellow, 451 So.2d at 221 (citing Clarke v. Burkle, 570 F.2d 824 (8th Cir.1978)).
¶ 12. Applying federal authority,[2] this Court has held that there is no effective *217 time limit, for seeking relief from a void judgment under Rule 60(b)(4), as “no amount of time or delay may cure a void judgment.” Overbey v. Murray, 569 So.2d 303, 306 (Miss.1990) (citing 7 J. Moore & J. Lucas, Moore’s Federal Practice ¶ 60.25[4] (2d ed. 1987)). “In defining a void judgment, this Court has repeated the federal rule, which states that ‘a judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.’ ” Id. (quoting Bryant, Inc. v. Walters, 493 So.2d 933, 938 (Miss.1986)).
¶ 13. It is not alleged that the chancery court lacked jurisdiction over the parties to the 1998 divorce action or acted in a manner inconsistent with due process of law. The only challenge available to John, then, is that the chancery court lacked subject-matter jurisdiction over the 1998 proceeding. Regarding subject-matter jurisdiction, this Court has held:
Jurisdiction of the subject matter is the power of the court to hear and determine cases of the general class to which the particular case belongs.... [I]f a court has jurisdiction of the subject matter, it has the power to decide the case according to its own view of the law and the facts; the test of jurisdiction is whether the court has the right to enter on the inquiry, and not whether its methods were regular, its findings right, or its conclusions according to law.... The authority to decide a case at all, and not the decision rendered therein, is what makes up jurisdiction, and when there is jurisdiction over the person and subject matter, the decision of all other questions arising in the case is but an exercise of that jurisdiction.
Duvall v. Duvall, 224 Miss. 546, 552-53, 80 So.2d 752, 754 (1955) (citations omitted). Thus, this Court must determine whether the chancery court had subject-matter jurisdiction over the general class of cases to which the challenged judgment belongs.
¶ 14. The source of the equity jurisdiction of the chancery court is the Mississippi Constitution. Id. at 555, 80 So.2d 752. The Mississippi Constitution grants the chancery courts full jurisdiction over the following matters: “(a) All matters in equity; (b) Divorce and alimony; (c) Matters testamentary and of administration; (d) Minor’s business; (e) Cases of idiocy, lunacy, and persons of unsound mind;” and “(f) All cases of which the said court had jurisdiction under the laws in force when this Constitution is put in operation.” Miss. Const, art. 6, § 159. The Raven-steins’ divorce proceeding explicitly falls within the chancery court’s subject-matter jurisdiction granted by our Constitution. See id. Incidental to that authority, the chancery court may make “all orders touching the care, custody and maintenance of the children of the marriage” upon granting a divorce. Miss.Code Ann. § 93-5-23 (Rev.2013). This Court has held:
Where a court has- jurisdiction over the person and the subject matter, no error in the exercise of such jurisdiction can make the judgment void, and ... a judgment rendered by a court of competent jurisdiction is not void merely because there are irregularities or errors of law in connection therewith. This is true even if a fundamental error of law appears upon the face of the record.
See Todd v. Todd, 197 Miss. 819, 827, 20 So.2d 827, 830 (1945) (citations omitted) (emphasis added). Therefore, even if the chancellor’s decision to award lifetime child support was erroneous as a matter of law, as John argues, that decision was *218 merely an erroneous exercise of the chancery court’s valid subject-matter jurisdiction over matters of divorce, alimony, and child support.
¶ 15. Because the chancery court had subject-matter jurisdiction .over the divorce action, its judgment is not void, and the correctness of its decision cannot be the target of a collateral attack under Rule 60(b)(4). Nor can John rely on Rule 60(b)(5) or (6) as avenues for relief. The chancellor found that John’s motion for relief was untimely, citing opinions of both this Court and the Court of Appeals in which motions for relief filed more promptly than John’s motion were still found to be untimely. See Hinds County Bd. of Supervisors v. Common Cause of Miss., 551 So.2d 107, 119 (Miss.1989) (motion filed two years after judgment found to be untimely); In re Dissolution of Marriage of De St. Germain, 977 So.2d 412, 416 (Miss.Ct.App.2008) (motion filed five years after judgment found to be untimely); Netterville v. Weyerhaeuser, 963 So.2d 38 (Miss.Ct.App.2007) (motion filed six years after judgment found to be untimely). It is clear from the record that John objected to the court’s award of lifetime child support from the moment the divorce judgment was entered. Yet, John never appealed the divorce judgment but abided by Chancellor Lutz’s judgment for thirteen years, allowing Elisha, and more importantly Ryan, to assume that such support would continue, before seeking judicial resolution of his argument. Under the facts of this case, such a delay clearly does not constitute a “reasonable time” within the meaning of Rule 60(b).
¶ 16. “Rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies.” Palmer v. Grand Casinos of Miss., Inc., 744 So.2d 745, 746 (Miss.1999) (quoting State ex rel. Miss. Bureau of Narcotics v. One (1) Chevrolet Nova, 573 So.2d 787, 790 (Miss.1990)). We find that John has not presented this Court with an extraordinary or compelling circumstance that would justify opening the judgment made by a court of competent jurisdiction some fifteen years ago. Accordingly, we hold that the chancery court did not abuse its discretion in denying John’s Rule 60(b) motion for relief from the 1998 divorce judgment.
B. Motion for Modification of Child Support
¶ 17. A parent’s duty to support his or her children after divorce and the court’s authority to order such support are addressed in the statutes governing divorce. Section 93-5-23 of the Mississippi Code provides:
When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as it may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage....
Miss.Code Ann. § 93-5-23 (Rev.2013). “Modification of child support may be warranted only where there is a showing of an after-arising material change in circumstances regarding one or more of the interested parties, i.e., the father, mother, or child.” Setser v. Piazza, 644 So.2d 1211, 1215 (Miss.1994) (citing Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)). The Legislature’s inclusion of the “after-arising” language in Section 93-5-23 means that the change in circumstances must have been unanticipated by the parties at the time the child-support judgment was entered. McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994). Some factors which may be considered in determining *219 whether a modification of child support is warranted are:
(1) increased needs caused by advanced age and maturity of the children (2) increase in expenses, and (3) inflation factor. Other factors include (4) the relative financial condition and earning capacity of the parties, (5) the health and special needs of the child, both physical and psychological, (6) the health and special needs of the parents, both physical and psychological, (7) the necessary living expenses of the father, (8) the estimated amount of income taxes the respective parties must pay on their incomes, (9) the free use of a residence, furnishings, and automobile and (10) such other facts and circumstances that bear on the support subject shown by the evidence.
Adams v. Adams, 467 So.2d 211, 215 (Miss.1985). John’s request for termination of child support “is a request for the modification of child support at its utmost extreme.” Bryant v. Bryant, 924 So.2d 627, 631 (Miss.Ct.App.2006).
¶ 18. In his 1998 divorce judgment, Chancellor Lutz ordered John to make monthly child-support payments for Ryan’s lifetime due to the fact that Ryan’s severe medical conditions would permanently prevent him from caring for himself. John made child-support payments for roughly thirteen years, until Ryan’s twenty-first birthday. John then filed a motion requesting the chancery court to modify, and effectively terminate, his child-support obligations. John argued that Ryan’s twenty-first birthday was a material change in circumstances warranting termination of his child-support obligations, asserting that his obligation to support Ryan terminated as a matter of law on Ryan’s twenty-first birthday. Chancellor Brewer denied John’s motion, finding that Ryan’s twenty-first birthday was not a material change in circumstances, unanticipated by the parties at the time of the divorce, that would warrant a modification of the initial child-support order.
¶ 19. We find that Chancellor Brewer was correct in denying John’s motion for modification of child support. At the time of the divorce, John certainly could anticipate that his son eventually would reach the age of majority. In fact, John sought reconsideration of the chancery court’s order requiring him to pay lifetime child support. However, John never appealed this order, but now seeks termination of his child-support obligation through a motion for modification, which in reality is nothing more than a repackaging of his untimely Rule 60(b) motion. John never challenged Chancellor Lutz’s opinions regarding Ryan’s inability to care for himself. On the contrary, John later agreed with Elisha that the appointment of a conservator was necessary for Ryan’s care and support due to Ryan’s physical and mental incapacity. John also provided Chancellor Brewer with a financial affidavit pursuant to Uniform Chancery Court Rule 8.05, revealing substantial income, in which he included his child-support payment as a monthly expense. Under the established law governing modification of child support, the record is clear that John failed to present the court with evidence of any unanticipated material change in circumstances warranting a modification of child support. Accordingly, we hold that the chancellor did not abuse her discretion in denying John’s motion for modification of child support.
II. Whether the chancery court applied the wrong legal standard when determining who would be appointed conservator of Ryan Ravenstein.
¶ 20. The Legislature created *220 the conservatorship[3] to provide for the care of persons who, by reason of advanced age, physical incapacity, or mental weakness, are incapable of managing their own estates. Miss.Code Ann. § 93-13-251 (Rev.2013). Upon petition by the ward or a person seeking to be appointed conservator, the chancery court “may appoint a conservator to have charge and management of the property of the person and, if the court deems advisable, also to have charge and. custody of the person subject to the direction of the appointing court.” Id. In determining the need for a conser-vatorship, a “management competency test” is applied by considering the following: “ability to manage, or improvident disposition, or dissipation of property, or susceptibility to influence or deception by others, or other similar factors.” Harvey, 459 So.2d at 292. The chancery court may, in its discretion, appoint a guardian ad litem to look after the interests of the person for whom a conservatorship is sought. Miss.Code Ann. § 93-13-255 (Rev.2013). Once a conservator is appointed for an individual, the conservator has the same duties, responsibilities, and powers as a guardian of a minor. Miss.Code Ann. § 93-13-259 (Rev.2013).
¶ 21. The conservatorship statutes do not set a specific standard for courts to apply when faced with competing petitions for appointment of a conservator, as the chancery court faced in this case. However, this Court has held that “[i]t is the inescapable duty of the [chancery] court and or the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis.” Union Chevrolet Co. v. Arrington, 162 Miss. 816, 826-27, 138 So. 593 (1932). Based on this foundational principle, chancery courts generally are given wide discretion to “take all necessary steps to conserve and protect the best interest of these wards of the court” in determining the appropriate person to be appointed as a conservator. Id. See, e.g., In re Conservatorship of Cole, 958 So.2d 276, 283 (Miss.Ct.App.2007) (finding chancellor’s appointment of oldest son, rather than second son, as conservator over father’s person “was well within the chancellor’s discretion to make and was not manifestly erroneous.”).[4]
¶ 22. When the Ravensteins divorced in 1998, the chancery court awarded physical and legal custody of Ryan to Elisha. Chancellor Lutz recommended that the parties follow the proper steps for dealing with a disabled adult’s estate when Ryan turned twenty-one. When Ryan turned twenty-one, John and Elisha followed the chancellor’s direction, and each filed a petition to appoint a conservator for Ryan. Chancellor Brewer adopted Chancellor Lutz’s conclusion that Ryan would forever remain a child, which was never disputed by the parties, and treated John’s petition to be appointed Ryan’s conservator as a request to modify custody of Ryan. The following discussion took place between Chancellor Brewer and Paul Rogers, counsel for John, during the conservatorship hearing:
MR. ROGERS: Again, I guess, Your Honor, I think I have approached this, *221 as has, I believe, opposing counsel, is that we want the Court to decide which parent should be the conservator, but we are not approaching that from the basis of a material change in circumstances.
THE COURT: I think you are, Mr. Rogers. I think you are. I think that’s going to be your burden, because in his ruling Judge Lutz said the child should remain with his mom. And if that’s the case, then you have the burden, non-mom, of establishing a material change in circumstances which adversely affects the minor child, now over the age of twenty-one. And if that is not the case, why is that not the case, which is a procedural question.
Chancellor Brewer held that John had failed to produce credible evidence relating to any adverse material change in circumstances that would warrant a change in custody or visitation.
¶23. We find that the chancery court erroneously applied the legal standard for modification of child custody in determining who should be appointed as Ryan’s conservator. Chancellor Brewer presided over the conservatorship hearing as if the only issue to be decided was whether John could modify Chancellor Lutz’s previous child-support order, but the conservator-ship hearing was a new and distinct proceeding. Chancellor Lutz’s determinations concerning Ryan’s disabilities at the age of seven did not constitute a per se appointment of Elisha as his lifetime guardian. Effectively, then, the chancellor placed no burden upon Elisha, but required John to prove a material change in circumstances to be considered as conservator of the person and estate of the couple’s now-adult son.
.¶24. Importantly, Section 93-13-251 gives the chancery court the authority to appoint a conservator first “for the management of the property” of the ward. Miss.Code Ann. § 93-13-251 (Rev.2013). Then, “if the court deems it advisable,” the conservator may also be granted “charge and custody” over the ward’s person. Id. The conservatorship hearing and the court’s ruling on the issue were concerned only with Ryan’s physical custody. But Chancellor Brewer appointed Elisha as conservator of Ryan’s person and estate, even though no evidence was presented regarding who could best manage Ryan’s estate. Chancellor Brewer should not have applied the law governing modification of child custody to require John to prove an adverse change in circumstances. Instead, Chancellor Brewer should have reviewed the evidence presented by both parties objectively, with no advantage given to either party, to determine if appointing either parent as conservator over Ryan’s estate, and, “if the court deems it advisable” over his person, would be in Ryan’s best interest.[5] Accordingly, we reverse the chancellor’s appointment of Elisha as Ryan’s conservator and remand for a new conservatorship hearing.
III. Whether the chancery court erred in not requiring Elisha to deposit all support paid by John for the benefit of Ryan to a Con-servatorship Account and in not requiring Elisha to file an inventory and accounting of all support funds and to post a bond.
¶ 25. As previously discussed, conservators have the same powers, duties, *222 and responsibilities, as legal guardians. Miss.Code Ann. § 93-13-259 (Rev.2013). A conservator stands in the position of a trustee and owes a fiduciary duty of loyalty to the ward. Bryan v. Holzer, 589 So.2d 648, 657 (Miss.1991). Conservators generally must enter into a bond payable to the State prior to obtaining the authority to act on behalf of their ward. Miss. Code Ann. § 93-13-17 (Rev.2013). Conservators are required by statute to submit an- annual inventory and accounting of the ward’s estate, real and personal, and of any money or other property which the guardian has received on behalf of the ward. Miss.Code Ann. § 93-13-33 (Rev. 2013); Miss.Code Ann. § 93-13-67 (Rev. 2013). Conservators generally must seek court approval prior to making expenditures for the care and maintenance of their wards. Miss.Code Ann. § 93-13-38 (Rev. 2013).
¶26. This Court has held that the chancery court has the authority to remove a conservator for failure to comply with the aforementioned statutory safeguards. Matter of Conservatorship of Mathews, 633 So.2d 1038 (Miss.1994). In Mathews, an elderly widow’s nephew was named as her conservator. Id. After two years, another of the widow’s nephews filed a motion to remove the conservator, citing questionable management of the widow’s estate, and the chancery court granted the motion. Id. A review of the chancery court’s records revealed that the annual inventories filed by the conservator were untimely and failed to include some of the widow’s investment assets. Id. at 1039. The annual reports required by Section 93-13-67 of the Mississippi Code were not timely filed, either. Id. This Court was profoundly concerned by the conservator’s failure to seek court approval before making expenditures from the widow’s estate. Id. at 1040. “That prior court approval is absolutely required by statute before a conservator makes expenditures seems never to have occurred to counsel representing [the conservator] or the chancellor who then examined and approved him.” Id. The conservator also invested the widow’s funds without court approval, in violation of Section 93-13-57 of the Mississippi Code. Id. at 1041. Because of the conservator’s failure to follow the basic procedural requirements for his position, this Court held that the chancery court did not abuse its discretion in removing him from his position. Id.
¶27. The procedural safeguards applicable to conservators were not followed in this case. After granting Elisha’s petition ' to be named Ryan’s conservator, Chancellor Brewer held that the monthly payments ordered to be paid by John to Elisha on Ryan’s behalf continued to constitute child support, even though Ryan was over the age of twenty-one. Therefore, to the chancery court, these payments were not assets of Ryan’s estate and did not constitute a separate financial estate for which bond, accounting, or court approval for expenditures thereof would be required.
¶ 28. We find that, with respect to the child-support funds received by Elisha for Ryan’s benefit, Chancellor Brewer was correct in not requiring Elisha to post a bond, provide an accounting of those funds, or seek court approval before spending those funds. The monthly payments made from John to Elisha for ■Ryan’s benefit still constitute child support. However, because Ryan may receive funds in the future that will constitute a separate financial estate, Elisha should have been required to comply with *223 these statutory safeguards nonetheless. While Chancellor Brewer correctly determined that John still owed a duty to make support payments for Ryan’s benefit, Ryan’s conservatorship is a separate matter governed by different authority. Mississippi statutory law is clear that conservators, like other legal guardians, must comply with certain procedures before they are allowed to proceed with their duties. The chancery court is given some discretion in requiring a bond or accounting in certain situations. See Miss.Code Ann. § 93-13-17 (Rev.2013) (a guardian need not enter into a bond with respect to any portion of the ward’s estate which, pursuant to an order of the court in its discretion, is held in certain insured financial institutions); Miss.Code Ann. § 93-13-67 (Rev.2013) (upon good cause shown, a guardian may dispense with the filing of annual accounts when the ward’s estate does not exceed $3,000, or when the only funds received by the guardian are paid by the Department of Human Services, or when the ward’s estate consists solely of funds deposited in certain financial institutions by order of the chancery court). In this case, though, the chancery court completely disregarded these safeguards based on the determination that Ryan had no separate estate. On the contrary, any funds received by Elisha in her capacity as Ryan’s conservator would constitute part of Ryan’s estate. By exempting Elisha from the well-established statutory re-, quirements for managing conservator-ships, the chancellor effectively removed Elisha from judicial accountability for any of the funds she might receive in the future on Ryan’s behalf.
IV. Whether the chancery court erred when it awarded support to Elisha for the benefit of an adult who was not joined as a party to the action.
¶ 29. John argues that Chancellor Brewer erred in awarding post-majority child support to Elisha because Elisha did not have standing to seek such support. See Taylor v. Taylor, 478 So.2d 310, 313 (Miss.1985) (recognizing that “if there is a legal duty for a parent to support an adult incapacitated child, the duty runs from the parent to the child, and not from one divorced spouse to the other”). John’s argument travels under the assumption that, by denying his motions for relief from the 1998 judgment, Chancellor Brewer effectively granted Elisha continuing child support for Ryan’s benefit.
¶ 30. John’s argument is misplaced. Elisha did file a motion for contempt and modification of child support against John along with her petition to be appointed as Ryan’s conservator, but the chancellor never ruled on Elisha’s motions. Chancellor Brewer did not “award support” to Elisha, but merely denied John’s requests to be freed from a prior order of the court.
¶ 31. Our conservatorship statutes require only that Ryan and one relative other than the petitioner be given notice of the conservatorship proceeding. Miss. Code Ann. § 93-13-253 (Rev.2013). A review of the record indicates that the parties complied with all notice requirements prior to the conservatorship hearing. Accordingly, John’s argument is without merit.
*224 V. Whether an interpretation that Mississippi Code Sections 93-5-23 and 93-11-65 do not allow the chancellor the discretion or authority to award child support for the support of an adult child who is mentally or physically incapable of self-support after the age of twenty-one years would violate the Equal Protection Clause of the United States Constitution and the corresponding equal protection provision of the Mississippi Constitution. Specifically, whether such an interpretation violates an adult child’s (in this case, Ryan’s) right to equal protection under the law in light of the legislature’s enactment of Mississippi Code Section 43-19-33, which provides that a putative father is not relieved of the duty of support in the case of an adult child who “is mentally or physically incapable of self-support.”
¶ 32. After a thorough review of the supplemental briefs filed by the parties and the State, we find that it is unnecessary to address this issue. We find that John waived his right to challenge his child-support obligation when he failed to appeal Chancellor Lutz’s 1998 judgment and waited thirteen years to attack it collaterally. We reach this conclusion without deciding whether Sections 93-5-23 and 93-11-65 of the Mississippi Code should be interpreted to allow for the provision of post-majority support for adult disabled children. The constitutionality of Section 43-19-33(3), which does not apply to the parties here, is not relevant to the disposition of this case. See Kron v. Van Cleave, 339 So.2d 559, 563 (Miss.1976) (“It is familiar learning that courts will not decide a constitutional question unless it is necessary to do so in order to decide the case.”).

CONCLUSION

¶ 33. We affirm the chancery court’s denial of John’s motions for relief from judgment or, alternatively, modification of child support. However, the chancery court failed to follow the law governing conservatorships in ruling on John’s and Elisha’s petitions to be named as Ryan’s conservator. Accordingly, we reverse the chancery court’s appointment of Elisha as Ryan’s conservator and remand for a new conservatorship proceeding in compliance with the law governing the establishment of a conservatorship for Ryan’s person and estate.
¶ 34. AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. PIERCE, J„ SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND CHANDLER, JJ. KING, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS, CHANDLER AND PIERCE, JJ.

. Taylor v. Taylor, 478 So.2d 310 (Miss.1985) (noting a nationwide trend in requiring parents to support adult children who are unable to provide their own support due to a disability).

. Mississippi Rule of Civil Procedure 60(b) is similar to Federal Rule of Civil Procedure *217 60(b), and this Court often looks to federal authority when interpreting Rule 60(b).

. The difference between a conservatorship and a guardianship is the lack of necessity of an incompetency determination or the existence of a legal disability for the initiation of a conservatorship. Harvey v. Meador, 459 So.2d 288, 292 (Miss.1984).

. The "best-interest-of-the-ward” standard has been followed implicitly by the courts of this state and consistently has been applied by the courts of other jurisdictions addressing the issue. See Priority and preference in appointment of conservator or guardian of an incompetent, 65 A.L.R.3d 991 (1975).

. Though not required by statute, it may be helpful for the chancellor to appoint a guardian ad litem to represent Ryan's interests during the proceedings. See Miss.Code Ann. § 93-13-255 (Rev.2013).