# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2025-CA-01513-SCT

*CHRISTOPHER HARPER SOLOP*

*v.*

*SARAH ELIZABETH SOLOP*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/2025 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| TRIAL COURT ATTORNEYS: | TRAVIS JONATHAN CONNER |
| | LYNN PATTON THOMPSON |
| | JOHN ROBERT WHITE, JR. |
| | CHRISTOPHER SOLOP |
| | DANNA ALBERT O'BRIEN |
| | WILLIAM THOMAS HOLLINGSWORTH |
| | MARC E. BRAND |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | LYNN PATTON THOMPSON |
| | JOHN ROBERT WHITE, JR. |
| | CHRISTOPHER SOLOP |
| | TRAVIS JONATHAN CONNER |
| ATTORNEYS FOR APPELLEE: | JOHN S. GRANT, IV |
| | BROOKE TRUSTY GRANT |
| | MARC E. BRAND |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED - 05/21/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**BRANNING, JUSTICE, FOR THE COURT:**

¶1.    Sarah Elizabeth Solop and Christopher Harper Solop share joint legal and physical

custody of their three minor children, with equal custodial time rotating weekly. Christopher,

an active-duty captain with the Mississippi Army National Guard, received a seven-month

overseas deployment that began in January 2026. Before his deployment, Christopher filed an emergency petition in the trial court seeking to delegate all of his court-ordered custodial time to his parents, Christopher and Juanaree Solop (the Solops), during his deployment. Because the trial court correctly interpreted the applicable law and because its decision was supported by substantial evidence, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2. After a twelve-year marriage resulting in three children, Christopher and Sarah were granted an irreconcilable-differences divorce in which the court ordered that they "rotate physical custody of the children on a week on, week off basis." After the parties' separation, Christopher began residing at his parents' home and exercised his weekly custodial time there. Because Christopher "received military orders [from the United States Army] requiring intermittent in-country training beginning in January 2026, for a period of unknown duration," he filed an emergency petition requesting the temporary delegation of his custodial rights and responsibilities of his minor children to his parents.

¶3. After a hearing on Christopher's emergency petition, the trial court denied Christopher's request for delegation of his custodial time but, instead, awarded the Solops "extensive temporary visitation" during Christopher's deployment. More specifically, the trial court granted the Solops: (a) visitation on the first, third, and fifth weekends of every month; (b) visitation on Monday, Tuesday, and Thursday from 3 p.m. to 6 p.m. during alternating weeks when the Solops do not have weekend visitation; and (c) visitation Wednesday night through Thursday morning of these same alternating weeks. Further, the

2

trial court ordered Sarah to retain custody during times not allocated to the Solops for visitation, to make the children reasonably available to Christopher when he has leave, and to facilitate the children's having electronic communications with Christopher during deployment, all as required by Mississippi Code Section 93-5-34(3)(c) (Rev. 2021).

¶4. Christopher moved for clarification and reconsideration of the trial court's order on the emergency petition, claiming, "[t]he Chancellor's ultimate determination to grant [Christopher's] parents . . . visitation rights, but not custody rights to the same extent as [Christopher] has physical custody, [was] a misapplication of Miss. Code Ann. Section 93-5-34." Sarah responded that the language of Section 93-5-34 does not require the chancellor to attempt to maintain the "status quo" during deployment and that the chancellor could "at [her] discretion, delegate all or a portion of the parents' visitation rights."

¶5. Then, a special master held a hearing via telephone conference regarding Christopher's request for clarification and reconsideration of the emergency order. And the trial court issued written "Clarifications to October 17, 2025 Findings/Recommendations," which stated that "[t]he October 17, 2025, Findings/Recommendation is a temporary order of custody that takes effect from and after the date of October 17, 2025, but only to the extent that Christopher is on temporary duty or deployed thereafter during a period of that would otherwise be his week for physical custody of the children." Further, the trial court entered an order denying Christopher's motion to reconsider.

¶6. On appeal, Christopher raises the following questions: (1) whether the chancellor properly interpreted and applied Section 93-5-34 in denying his request to delegate all of his

3

custodial time to his parents during his deployment; and (2) whether the chancellor manifestly erred or abused her discretion by awarding only extended visitation to Christopher's parents during his deployment. Further, Christopher requests that this Court clarify the interpretation and application of Section 93-5-34 to deploying parents with joint legal and physical custody, reverse the denial of his motion for reconsideration and the underlying findings and recommendations, and render judgment permitting his parents, the Solops, to exercise his custodial time during deployment to the same extent contemplated by Christopher and Sarah's settlement agreement.

## STANDARD OF REVIEW

¶7. This Court reviews a chancellor's interpretation and application of the law *de novo*. *Harwell v. In re Lauderdale Cnty.*, 172 So. 3d 714, 718 (Miss. 2015) (citing *Keener Props., LLC v. Wilson*, 912 So. 2d 954, 956 (Miss. 2005)).

¶8. Otherwise, "[o]ur standard of review in child custody cases is very narrow. Like the chancellor, our polestar consideration must be the best interest of the child. But it is not our role to substitute our judgment for [the chancellor's]." *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (Miss. 2002). "In a case disputing child custody, the chancellor's findings will not be reversed unless manifestly wrong, clearly erroneous, or the proper legal standard was not applied." *Mabus v. Mabus*, 847 So. 2d 815, 818 (Miss. 2003) (citing *Hensarling*, 824 So. 2d at 586).

¶9. Additionally, the chancellor's acceptance of a special master's findings is reviewed under this same standard. *See* M.R.C.P. 53(g)(2) ("The court shall accept the master's

4

findings of fact unless manifestly wrong.").   The term *substantial evidence* means "'such relevant evidence as reasonable minds might accept as adequate to support a conclusion' or to put it simply, more than a 'mere scintilla' of evidence." ***Tucker v. Prisock***, 791 So. 2d 190, 192 (Miss. 2001) (quoting ***Johnson v. Ferguson***, 435 So. 2d 1191, 1195 (Miss. 1983)).

## DISCUSSION

I.   **Whether the trial court properly interpreted and applied Section 93-5-34 in denying Christopher's request to delegate all of his custodial time to his parents during his deployment.**

¶10.   After a hearing on Christopher's emergency motion, the trial court found that

> pursuant to section 93-5-34(3) and section 93-5-34(4), the court finds there is a distinction between a parent with custody of a minor child and a parent who has visitation rights with a minor child.  [It] finds that section 93-5-34 of the Mississippi code does not provide that a parent may unilaterally delegate custodial rights of a child solely due to being deployed by the United States Military.

Based on this reasoning, the court ultimately denied Christopher's request for a complete delegation of his custodial time to his parents but granted the Solops extended visitation time.

¶11.   On appeal, Christopher argues that "[t]he Chancellor's ultimate determination to grant [Christopher's] parents . . . visitation rights, but not custody rights to the same extent as [Christopher] has physical custody, [was] a misapplication of Miss. Code Ann. Section 93-5-34." More specifically, Christopher argues that the trial court improperly interpreted the lack of a reference to *delegate* in Section 93-5-34(3), compared to an affirmative reference to *delegate*, as a limitation on its authority to grant Christopher's request.  And Christopher contends that Mississippi Code Section 93-5-34(1) (Rev. 2021) requires the trial court to "preserve, as near as possible, the status quo."   We disagree.

5

¶12. Article 6, section 159, of the Mississippi Constitution vests the chancery court with jurisdiction over divorce proceedings and minor business, among other matters. In addition, Section 93-5-34 provides, in relevant part:

> (3) When a parent who has custody, or has joint custody with primary physical custody, receives temporary duty, deployment or mobilization orders from the military that involve moving a substantial distance from the parent's residence having a material effect on the parent's ability to exercise custody responsibilities:
>
> > (a) Any temporary custody order for the child during the parent's absence shall end no later than ten (10) days after the parent returns, but shall not impair the discretion of the court to conduct a hearing for emergency custody upon return of the parent and within ten (10) days of the filing of a verified motion for emergency custody alleging an immediate danger of irreparable harm to the child; and
>
> > (b) The temporary duty, mobilization or deployment of the service member and the temporary disruption to the child's schedule shall not be factors in a determination of change of circumstances if a motion is filed to transfer custody from the service member.
>
> > (c) Any order entered under this section shall require that:
>
> > > (i) The non-deployed parent shall make the child or children reasonably available to the deployed parent when the latter parent has leave;
>
> > > (ii) The non-deployed parent shall facilitate opportunities for telephonic, "webcam," and electronic mail contact between the deployed parent and the child or children during deployment; and
>
> > > (iii) The deployed parent shall provide timely information regarding the parent's leave schedule to the non-deployed parent.

6

(4) If the parent with visitation rights receives military temporary duty, deployment or mobilization orders . . . *the court* otherwise *may* delegate the parent's visitation rights, or a portion thereof, to a family member with a close and substantial relationship to the service member's minor child for the duration of the parent's absence, if delegating visitation rights is in the child's best interest.

. . . .

(7) *Nothing in this section shall alter the duty of the court to consider the best interest of the child in deciding custody or visitation matters.*

Miss. Code Ann. §93-5-34(3)-(4), (7) (Rev. 2021) (emphasis added).

¶13.    With regard to the interpretation of a statute, this Court has held that "[t]he courts cannot restrict or enlarge the meaning of an unambiguous statute." ***Marx v. Broom***, 632 So. 2d 1315, 1318 (Miss. 1994) (citing ***City of Hazlehurst v. Mayes***, 96 Miss. 656, 51 So. 890 (1910); ***Hamner v. Yazoo Delta Lumber Co.***, 100 Miss. 349, 56 So. 466 (1911); ***State v. Traylor***, 100 Miss. 544, 56 So. 521 (1911)).  A statute is considered ambiguous if "it is susceptible to two reasonable interpretations." ***State ex rel. Fitch v. Yazaki N. Am., Inc.***, 294 So. 3d 1178, 1186 n.8 (Miss. 2020) (citing ***Dalton v. Cellular S., Inc.***, 20 So. 3d 1227, 1232 (Miss. 2009)).  And when no ambiguity exists "the Court will have *no* occasion to resort to the rules of *statutory interpretation*." ***Miss. Ethics Comm'n v. Grisham***, 957 So. 2d 997, 1000 (Miss. 2007) (internal quotation mark omitted) (quoting ***Marx***, 632 So. 2d at 1318).

¶14.    Section 93-5-34(4) (emphasis added) provides that "*the court . . . may* delegate the parent's *visitation* rights, or a portion thereof . . . ."  Additionally, Section 93-5-34(3), which speaks to *custody* instead of *visitation*, grants the trial court power to enter "[a]ny temporary custody order for the child during the parent's absence[.]"  Neither section contains language

7

that requires the trial court to consider the deploying parent's request for delegation, but the statute does not prohibit this consideration either.

¶15. Next, Section 93-5-34(7) states that "[n]othing in this section shall alter the duty of the court to consider the best interest of the child in deciding custody or visitation matters." Likewise, our chancery courts remain the "superior guardian" of minor children and are thus not bound by parental custody preferences. *Bryant v. Bryant*, 348 So. 3d 309, 314 (Miss. 2022) (internal quotation marks omitted) (quoting *Mathews v. Williams (In re Conservatorship of Mathews)*, 633 So. 2d 1038, 1040 (Miss. 1994)).

¶16. No portion of the statute abrogates or redirects a chancery court's power to hear and determine matters of custody, even when considering a delegation of custodial time or visitation for a deployed parent. The power of delegation of court-ordered custodial rights belongs to the court and not to a parent. The trial court correctly interpreted Section 93-5-34 in holding that a deployed parent does not enjoy unilateral delegation authority because the power to determine or delegate custodial rights is properly vested in the chancery court.

**II.  Whether the chancellor manifestly erred or abused her discretion by awarding only extended visitation to Christopher's parents during his deployment.**

¶17. During the emergency hearing, the court heard extensive testimony regarding the delegation of Christopher's custodial time. Christopher emphasized that it would be in the children's best interest for the Solops to assume his custodial visitation because it would be the least amount of change for the children. More specifically, he stated "the only real change is [his] mother picking them up and taking them to school" as well as "talking to

8

[him] over FaceTime." Christopher further stated that "as opposed to having the [children] switch to only living at one house for seven months and then switch back again . . . provides a seamless life for them." Christopher testified that he "think[s] they're probably better taken care of" at his parent's home, "they're always supervised by someone in their family[,]" and "they're never left alone when they're with [him] or at [his] parents' house."

¶18. Christopher admitted that the Solops and Sarah did not have a cordial relationship. Christopher's father also admitted that he and his wife did not particularly get along with Sarah since the divorce. Christopher's father even admitted to an instance when Sarah attempted to pick up the children from the Solops' home, but they refused to allow the children to leave. But Christopher maintained that Sarah and the Solops could coparent in his absence.

¶19. Sarah strongly objected to Christopher's attempt to delegate his custodial time to his parents. She explained how it has been "really hard on them for them to go back and forth" and how "it is absolutely excruciating to be apart from them." Sarah admitted that "she knows kids need their dads, but there is something that just feels so unnatural and awful about being separated from their mother."

¶20. Sarah further described the difficult nature of her relationship with the Solops. For example, Sarah testified about an incident at their daughter's school program when Christopher's mother "yelled at [Sarah] in the room in front of everybody." Christopher admitted in counseling that his parents were too old to watch the children on a weekend, thus more structured time during the week would be better for them.

¶21. Sarah testified that "it doesn't make any sense to [her] that somebody else is going to be putting [her] children to sleep every night" and because she knows "they are so hostile towards [her], they would purposefully not send her papers that come home from school." Sarah explained that "whenever Juanaree had the children and [she] calls her or texts her, [Juanaree] does not answer . . . so if [the Solops] ended up with 50/50, how is [she] supposed to trust that [the Solops] are going to answer[?]" Sarah stated that the only major injuries her children have ever had occurred when the Solops were watching them and that she worries about the children's care and health when they are with the Solops.

¶22. Based on the testimony and evidence presented, the trial court denied Christopher's petition but awarded Christopher's parents "more than just the standard weekend visitation with the minor children during their son's [d]eployment." The trial court further ordered Sarah to "[m]ake the children reasonably available to [Christopher] when he has leave" and to "facilitate opportunities for telephonic 'webcam' and electronic mail between [Christopher] and the children." Finally, the trial court ordered Christopher to "provide timely information regarding his leave schedule" to Sarah.

¶23. Because this case involved a temporary-custody order, an ***Albright*** analysis, *see* ***Albright v. Albright***, 437 So. 2d 1003, 1005 (Miss. 1983), was not required. ***Sanders v. Sanders***, 281 So. 3d 1046, 1054 (Miss. Ct. App. 2019). But given the limited scope of review and based on the foregoing discussion, it is clear that the trial court did not abuse its discretion by denying Christopher's petition and by awarding the Solops extensive temporary visitation instead.

## CONCLUSION

¶24. The trial court correctly interpreted Section 93-5-34 by holding that the statute does not authorize deployed parents to unilaterally delegate their court-ordered custodial time. Additionally, the trial court did not abuse its discretion by denying Christopher's petition and, instead, awarding the Solops substantial temporary visitation during his deployment. Accordingly, we affirm the trial court's judgment.

¶25. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., ISHEE AND SULLIVAN, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.**