# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01798-COA

IN THE MATTER OF THE
CONSERVATORSHIP OF MARGARETTE
SMITH:  CONSTANCE FITZMAURICE                                    APPELLANT

v.

CHARLES VANDEVORT, CONSERVATOR                                    APPELLEE

DATE OF JUDGMENT:              10/29/2014
TRIAL JUDGE:                   HON. WILLIAM H. SINGLETARY
COURT FROM WHICH APPEALED:     HINDS COUNTY CHANCERY COURT,
                               SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:       HARRIS H. BARNES III
                               JAMES WILLIAMS JANOUSH
ATTORNEY FOR APPELLEE:         SAM M. BRAND JR.
NATURE OF THE CASE:            CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION:                   REVERSED AND REMANDED – 08/08/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## CONSOLIDATED WITH

## NO. 2016-CA-00504-COA

IN THE MATTER OF THE LAST WILL AND
TESTAMENT OF MARGARETTE SMITH,
DECEASED:  CONSTANCE FITZMAURICE                                    APPELLANT

v.

CHARLES VANDEVORT, EXECUTOR                                    APPELLEE

DATE OF JUDGMENT:              10/29/2015
TRIAL JUDGE:                   HON. WILLIAM H. SINGLETARY
COURT FROM WHICH APPEALED:     HINDS COUNTY CHANCERY COURT,
                               SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:       HARRIS H. BARNES III
                               JAMES WILLIAMS JANOUSH

ATTORNEY FOR APPELLEE: SAM M. BRAND JR.
NATURE OF THE CASE: CIVIL - WILLS, TRUSTS, AND ESTATES
DISPOSITION: APPEAL DISMISSED – 08/08/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1. Constance Fitzmaurice filed separate contempt petitions against Charles Vandevort stemming from his conduct as Margarette Smith's conservator and the executor of Smith's estate. The Hinds County Chancery Court, Second Judicial District, dismissed the former and stayed the latter. Fitzmaurice's appeals were consolidated before they were assigned to this Court. We agree that the chancellor erred when he dismissed the contempt petition that Fitzmaurice filed in Smith's conservatorship matter. Accordingly, we reverse the chancellor's judgment and remand that case for further proceedings.[1] However, we lack jurisdiction to hear the appeal from Smith's estate, because the chancellor's order staying Fitzmaurice's contempt petition was not a final judgment. As such, we dismiss that appeal.[2]

**FACTS AND PROCEEDINGS BELOW**

¶2. Smith's only daughter, Isabella Robinson, predeceased her. Robinson's daughter, Fitzmaurice, is Smith's sole descendant. The record contains almost no information regarding Vandevort's connection to Smith. Our source is a report prepared by the Mississippi Department of Human Services (MDHS) in response to an allegation that

---

[1] This ruling applies to case number 2015-CA-01798-COA.

[2] This ruling applies to case number 2016-CA-00504-COA.

Vandevort had been physically neglecting Smith and planning to acquire her assets. The report, which was filed in support of Fitzmaurice's contempt petitions, states that when Robinson died in October 2009, she and Vandevort had been dating and cohabiting for approximately a decade. Thus, Vandevort's connection to Smith was through Smith's daughter, Robinson, who was Fitzmaurice's mother.

¶3.     In November 2009, Vandevort filed a conservatorship petition alleging that Smith "suffer[ed] from dementia and other medical conditions." The petition only said that he was Smith's unrelated caregiver. Vandevort's petition further said that Smith's only living relative was an unnamed granddaughter, but "[n]either the deceased mother or father have heard from her" for fifteen years, and Vandevort did not know where she lived. Vandevort did not file supporting affidavits from two physicians with the petition. Instead, he said that after he was appointed as Smith's conservator, he would provide the court with an affidavit from Smith's physician. The chancellor entered an order granting Vandevort's conservatorship petition on the same day that it was filed. The order said that Smith was eighty-six years old and that she suffered from dementia. The order also directed Vandevort to file a statement from Smith's treating physician regarding her physical and mental health. There is a subsequent docket entry labeled "Affidavit of Physician," but the affidavit is not included in the appellate record.

¶4.     On January 13, 2010, Vandevort and Smith went to a BancorpSouth branch and opened a joint checking account with rights of survivorship without first obtaining the chancellor's permission. The bank employee who assisted them selected a box listed as

"cash" regarding the source of the initial $30,000 deposit. The next day, the chancellor appointed a guardian ad litem (GAL) to accept service of process, prepare an inventory of Smith's estate, and produce an accounting.

¶5. On January 19, 2010, Vandevort filed an amended conservatorship petition.[3] Contrary to Vandevort's first petition, his amended conservatorship petition said that Smith had "no descendant." The amended petition did not disclose the existence of the joint checking account that Vandevort had opened less than a week earlier. The clerk's docket entries indicate that the chancellor subsequently conducted a hearing during February 2010, but the record does not contain a transcript of the hearing.

¶6. The next docket entry is the GAL's March 5, 2010 motion to approve his inventory and accounting, all of which are omitted from the record. The chancellor granted the GAL's motion on the same day that it was filed. The chancellor noted that Smith had approximately $87,000 in "cash on hand," and Smith's income was nearly $1,500 per month. Stating that Smith's accounts with Bank of America were "exceedingly hard for [Vandevort] to deal with," the chancellor ordered Vandevort "to have the accounts consolidated at" BancorpSouth. There is no indication that the chancellor was aware that Vandevort and Smith had opened the joint account with rights of survivorship. In a handwritten notation, the chancellor directed Vandevort to post a $100,000 bond.

¶7. Smith had a checking account and a savings account at Bank of America, where she

_____

[3] Along with the GAL's appointment to accept service of process, the amended petition and the hearing that followed were intended to cure the deficiencies surrounding Vandevort's initial appointment as Smith's conservator. *See* Miss. Code Ann. §§ 93-13-253 & -255 (Rev. 2013).

4

had been banking since 1972. Her and Robinson's names were on both accounts. The record contains one "Combined Account Statement" related to Smith's accounts at Bank of America. As of April 15, 2010, Smith had approximately $43,000 in her checking account, and $19,000 in her savings account.[4] On April 27, 2010, Vandevort transferred $30,000 from Smith's accounts. He transferred another $31,000 on June 4, 2010.

¶8.    On June 21, 2010, Smith executed a will. Prepared by the same lawyer who represented Vandevort throughout the conservatorship proceedings, the will named Vandevort as the sole beneficiary of Smith's estate. The will also nominated Vandevort as the executor of Smith's estate. Smith died on November 29, 2010.

¶9.    In December 2010, Vandevort filed a petition to probate Smith's will. He also submitted an affidavit stating that he had diligently tried to find anyone who might have a claim against Smith's estate. On January 6, 2011, Chancellor Dewayne Thomas entered an order admitting the will to probate, appointing Vandevort as the executor of Smith's estate, and granting Vandevort's request for permission to have Smith cremated.

¶10.    On January 18, 2011, Vandevort withdrew $90,000 from the joint checking account at BancorpSouth. According to counsel for Fitzmaurice, on February 11, 2011, Vandevort used the money to buy a house in Tacoma, Washington.

¶11.    Although not borne out by the record or the chancery clerk's docket entries, the parties and the chancellor all represent that on July 14, 2011, Fitzmaurice filed a complaint to set

_____

[4] Until May 2010, Smith's monthly income through Social Security benefits and her deceased husband's pension had been deposited in her checking account at Bank of America. After that time, it was deposited in the joint account at BancorpSouth.

5

aside Smith's will. The record is silent regarding how or when Fitzmaurice became aware of the estate or conservatorship proceedings. Five days later, Vandevort filed a petition to approve his final conservatorship accounting and release him from any further responsibilities as Smith's conservator. Vandevort's final accounting did not include any financial statements beyond November 2010. Thus, the final accounting represented that Smith had nearly $100,000 in the BancorpSouth account, and it omitted the fact that Vandevort had withdrawn $90,000 on his own initiative during January 2011.

¶12. Again, the chancellor granted Vandevort's petition on the same day that it was filed.[5] The chancellor's order was prepared by Vandevort's attorney. It approved Vandevort's final accounting and discharged Vandevort from any further duties as Smith's conservator. The order further said that all of the conservatorship's assets "are hereby transferred" to Smith's estate. Notwithstanding his representation that there was nearly $100,000 in Smith's checking account, Vandevort did not transfer that figure to Smith's estate.

¶13. On October 13, 2013, Fitzmaurice filed a contempt petition in Smith's conservatorship proceeding. She also filed a separate but identical contempt petition in Smith's estate proceeding. Fitzmaurice alleged that Vandevort should be held in civil contempt for breaching his fiduciary duties to Smith, and he failed to comply with the chancellor's orders. Among other exhibits, Fitzmaurice attached a copy of the MDHS report mentioned above.

¶14. The report was prompted by Vandevort's ex-wife, Joyce, who contacted MDHS

---

[5] Vandevort's final accounting should have remained on file for thirty days so any interested party could have an opportunity to inspect it and contest it. *See* Miss. Code Ann. § 91-7-295 (Rev. 2013).

shortly after she visited Smith and Vandevort during January 2010. Joyce alleged that Vandevort was physically neglecting Smith, screaming at her, and giving her Prozac that had been prescribed for Robinson. Joyce also reported that Vandevort wanted all of Smith's money through inheritance or otherwise, and that Vandevort had shown her $80,000 of Robinson's money that he had "stashed" in Smith's house. Finally, Joyce claimed that Vandevort knew that Fitzmaurice lived in California, but he intentionally said otherwise.[6]

¶15. The report also indicates that approximately a month before Smith executed the will naming Vandevort as the sole beneficiary of her estate, an MDHS investigator visited with Smith and attempted to interview her. According to the report, Smith "did not have the mental capacity to answer [the] allegations when asked . . . ." The MDHS investigator further reported that Smith "could not answer questions on the Mini Mental Stat[e] Examination" and that she "was not oriented to day, date, season, etc."

¶16. Vandevort subsequently moved to dismiss both of Fitzmaurice's contempt petitions. According to Vandevort, the contempt petition that Fitzmaurice filed in the conservatorship proceeding was untimely per the two-year statute of limitations set forth in Mississippi Code Annotated section 91-7-309 (Rev. 2013). Fitzmaurice responded that she was not attempting to reopen Vandevort's accounting, so the two-year statute of limitations did not apply. The chancellor ultimately agreed with Vandevort. Consequently, the chancellor dismissed the contempt petition that Fitzmaurice filed in the conservatorship proceeding. However, the

---

[6] In her contempt petitions, Fitzmaurice's listed mailing address was a post-office box in Fawnskin, California. When confronted by MDHS, Vandevort denied that he knew where Fitzmaurice lived.

chancellor stayed Fitzmaurice's other contempt petition until he ruled on her complaint to set aside Smith's will. Fitzmaurice appeals both the denial of the contempt motion in the conservatorship matter and the stay of the contempt motion filed in the will contest. Before assigning the appeals to this Court, the Mississippi Supreme Court granted Fitzmaurice's motion to consolidate her two appeals.

## DISCUSSION

### I. The chancellor erred by dismissing the contempt petition that Fitzmaurice filed in the conservatorship proceeding.

¶17. The chancellor dismissed Fitzmaurice's contempt petition after finding that it was untimely under the two-year statute of limitations. Alternatively, the chancellor held that even if Fitzmaurice's claims were not untimely, "dismissal would still be appropriate" because even if Vandevort had violated the chancellor's orders, "the same resulted in no harm to [Smith] and no frustration to the [chancery court's] purposes . . . ." We construe this to mean that the chancellor would have dismissed Fitzmaurice's claims under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure.

¶18. Statute-of-limitations issues are questions of law that an appellate court reviews de novo. *In re Guardianship of McClinton*, 157 So. 3d 862, 872 (¶28) (Miss. Ct. App. 2015). Dismissal under Rule 12(b)(6) is also a question of law requiring a de novo review. *Covington Cty. Bank v. Magee*, 177 So. 3d 826, 828 (¶5) (Miss. 2015). "[T]he allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id*. A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the

8

complaint, so Rule 12(b)(6) motions are decided solely on the face of the pleadings. *Id*. at 830 (¶15).

¶19.    Mississippi Code Annotated section 91-7-309 (Rev. 2013) provides that "[a]ny person interested may, at any time within two years after final settlement, by bill or petition, open the account of any executor, administrator, or guardian and surcharge and falsify the same, and not after . . . ." Fitzmaurice claimed that Vandevort was in civil contempt because he breached the fiduciary duties that he owed Smith,[7] disregarded the chancellor's order to post a bond, and ignored the chancellor's order to transfer the figure represented in the final accounting to Smith's estate.[8]   None of those claims were premised on reopening or falsifying Vandevort's final accounting. Fitzmaurice's claim that Smith's estate was entitled to the figure represented in the final accounting is not a claim to reopen or falsify the final accounting. In his answer, Vandevort recognized that Fitzmaurice had not attacked the final accounting.   Vandevort's attorney made a similar statement during the hearing on Vandevort's motion to dismiss.[9]  Based on the foregoing, we conclude that the chancellor

---

[7] More specifically, Fitzmaurice alleged that Vandevort breached his fiduciary duties to Smith when he (1) opened the joint account that gave him rights of survivorship; (2) did not resign as Smith's conservator when he created the conflict of interest stemming from the joint account; (3) did not resign when Smith executed the will naming him as the sole beneficiary of her estate; and (4) withdrew $90,000 from Smith's account.

[8] Fitzmaurice did not seek relief in the form of a constructive trust, which would be governed by a ten-year statute of limitations. *See* Miss. Code Ann. § 15-1-39 (Rev. 2012); *Winters v. AmSouth Bank*, 964 So. 2d 595, 599 (¶17) (Miss. Ct. App. 2007).

[9] It was Vandevort, not Fitzmaurice, who relied on a position that would require reopening the conservatorship accounting. Vandevort argued that he did not have to transfer the money to Smith's estate, because despite what he had represented to the chancellor in the June 2011 petition, Smith did not have approximately $100,000 in her account after

9

erred when he held that Fitzmaurice's claims were governed by the two-year statute of limitations set forth in section 91-7-309.

¶20.    Fitzmaurice argues that she had seven years to file her contempt petition because it was founded on a judgment or decree. *See* Miss. Code Ann. § 15-1-43 (Rev. 2012). Fitzmaurice is correct that section 15-1-43 governs her claim that Vandevort should be held in contempt for disregarding the order to transfer the balance of Smith's account to Smith's estate. That order was essentially a judgment or decree contemplated by section 15-1-43. But Fitzmaurice's other claims that Vandevort was in contempt because he disregarded the order to post a $100,000 bond and that he breached his fiduciary duties to Smith are not governed by section 15-1-43. *See In re Guardianship of Duckett*, 991 So. 2d 1165, 1174-75 (¶19) (Miss. 2008). In *Duckett*, 991 So. 2d at 1168-69 (¶3), a chancellor issued a decree prohibiting the distribution of guardianship funds without court approval. The wards later sued the bank that had allowed the guardian to withdraw from the guardianship account without the court's permission. *Id*. at 1171 (¶10). The Mississippi Supreme Court held that the wards' lawsuit was governed by the three-year "catch-all" statute of limitations, rather than the seven-year statute of limitations applicable to actions founded on a judgment or decree. *Id*. at 1174-75 (¶¶19-20).

¶21.    Fitzmaurice clearly cannot rely on the current executor of Smith's estate to pursue the money that the chancellor told Smith's former conservator to transfer. But an interested party can request that a chancellor find a fiduciary in contempt for neglecting "the performance of

_____

January 2011, and the balance of her account had transferred to him.

10

any duty required of him . . . ." Miss. Code Ann. § 91-7-285 (Rev. 2013). Whether someone qualifies as an "interested party" depends "on the type of fiduciary that has been appointed." *In re Conservatorship of Davis*, 954 So. 2d 521, 523 (¶9) (Miss. Ct. App. 2007). An interested party "has a legitimate [present or prospective] interest . . . in [an] estate . . . ." *Id*. at 525 (¶14). "Prospective" means "anticipated or expected; likely to come about." *Id*. Fitzmaurice has a legitimate prospective interest in Smith's estate; especially considering that she is Smith's sole legal heir and she had filed a complaint to set aside Smith's will.[10]

¶22. Even if section 15-1-43 did not govern Fitzmaurice's claim that Vandevort was in contempt for failing to transfer Smith's assets to her estate, like Fitzmaurice's remaining claims, it would fall under the three-year "catch-all" statute of limitations. *See* Miss. Code Ann. § 15-1-49(1) (Rev. 2012). On July 19, 2011, the chancellor ordered Vandevort to transfer Smith's assets to her estate. Fitzmaurice filed her contempt petition on October 13, 2013, which was well within the seven-year or three-year statutes of limitations. Fitzmaurice's claim that Vandevort breached his fiduciary duty to Smith when he withdrew

---

[10] It is true that "an agent is not liable to third parties for breaches of the duties that he owes to his principal." *In re Estate of Hemphill*, 186 So. 3d 920, 933 (¶49) (Miss. Ct. App. 2016). Similarly, Smith's estate has standing to challenge Vandevort's conduct while acting as her conservator. *See id*. at 934 (¶54). That does not necessarily mean that Fitzmaurice lacked standing to raise her contempt claims in the conservatorship. *See In re Allen*, 962 So. 2d 737, 744-46 (¶¶27-37) (Miss. Ct. App. 2007); Miss. Code Ann. § 91-7-285; UCCR 6.02. "Parties may sue or intervene where they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant." *City of Belmont v. Miss. State Tax Comm'n*, 860 So. 2d 289, 296 (¶13) (Miss. 2003). Smith's conservator was ordered to pay money to Smith's estate. For obvious conflicting self-serving reasons, Smith's executor has not marshalled that money. Under the peculiar circumstances of these cases, we find that Fitzmaurice's standing in the conservatorship and the estate is not mutually exclusive to the extent that she could *only* raise her claims in the estate proceeding.

$90,000 from the joint account on January 18, 2011, was also well within the three-year statute of limitations. Fitzmaurice's other claims were related to opening the joint account on January 13, 2010, the March 5, 2010 order to post a $100,000 bond, and the execution of Smith's June 21, 2010 will. Whether those claims were timely depends on when Fitzmaurice knew or should have known about them. *See* Miss. Code Ann. § 15-1-49(2). Neither the chancellor nor either of the parties discussed the application of the three-year "catch-all" statute of limitations or the time that Fitzmaurice knew or should have known about her remaining claims. Accordingly, it was improper to find that they were untimely.

¶23. That does not end the analysis. As mentioned above, the chancellor also held that Fitzmaurice's contempt petition should be dismissed because even if Vandevort had failed to comply with the court's orders, "the same resulted in no harm to [Smith] and no frustration to the [chancery court's] purposes . . . ." We construe this to be the chancellor's conclusion that Fitzmaurice failed to state a claim upon which relief can be granted. And we disagree with such a conclusion.

¶24. On the face of her contempt petition, Fitzmaurice raised viable claims that Vandevort breached his fiduciary duty of loyalty to Smith. She also raised viable claims that Vandevort disregarded the chancellor's orders to post a bond[11] and transfer the balance represented in his accounting to Smith's estate. "No person bound to act for another can act for himself."

---

[11] A conservator must generally post a bond payable to the state before obtaining authority to act on a ward's behalf. *Ravenstein v. Ravenstein*, 167 So. 3d 210, 222 (¶25) (Miss. 2014) (citing Miss. Code Ann. § 93-13-17 (Rev. 2013)). The bond would have allowed Fitzmaurice to pursue a lawsuit against the surety in the event that Vandevort is found liable for misappropriating money from Smith during the course of the conservatorship. *See Bryan v. Holzer*, 589 So. 2d 648, 660 (Miss. 1991).

George D. Warner Jr., *Warner's Griffith Mississippi Chancery Practice* § 47 (1991). Without question, "[a] conservator stands in the position as a trustee and owes a fiduciary duty of loyalty to the ward." *Ravenstein*, 167 So. 3d at 222 (¶25) (citing *Bryan*, 589 So. 2d at 657). A conservator has the "same duties, powers and responsibilities as a guardian of a minor, and all laws relative to the guardianship of a minor shall be applicable to a conservator." Miss. Code Ann. § 93-13-259 (Rev. 2013). "A guardian has [a] duty to keep a ward's money . . . separate from his . . . own." 39 Am. Jur. 2d *Guardian and Ward* § 132 (2008).

¶25. Any time a conservator places his ward's money in a jointly held account with rights of survivorship that did not exist before the conservatorship, this should be a red flag for problematic behavior; particularly when, as here, the conservatorship was established based on the ward's diminished mental capacity. Joint accounts created when a ward is mentally incompetent are void. *Conservatorship of Kendrick v. Hancock Bank*, 537 So. 2d 888, 891 (Miss. 1989). It is undisputed that while he was acting as Smith's conservator, Vandevort opened a joint account in his and Smith's names without first obtaining the chancellor's permission. Vandevort also deposited Smith's money into that account, in effect using his authority as Smith's conservator to bequeath her money to himself.[12] Fiduciaries acting

---

[12] It was not improper for Fitzmaurice to attack this transaction in the context of the conservatorship, rather than Smith's estate. Vandevort effectuated the transaction while acting as Smith's conservator. Additionally, "survivorship property becomes the property of the survivor, and the joint tenant's estate has no interest in these funds." *Will of McCaffrey v. Fortenberry*, 592 So. 2d 52, 64 (Miss. 1991). However, that does not necessarily mean that Fitzmaurice could not have sought to set aside Vandevort's creation of the joint account through the complaint that she filed in Smith's estate. It simply means that one case centers on Vandevort's obligation to steward Smith's money and pay it to her

under a chancery court's authority are prohibited from directly or indirectly borrowing or using estate money for their own benefit. Miss. Code Ann. § 91-7-253 (Rev. 2013). More than a century ago, our Supreme Court examined a case in which a guardian had obtained the title to his wards' real property during the course of the guardianship. *Brandau v. Greer*, 95 Miss. 100, 102-03, 48 So. 519, 520 (1909). The Supreme Court unequivocally held that "[n]o transaction of this sort can or ought to be allowed to stand. It contravenes every rule of law applying to a person in a fiduciary character." *Id*. "A trustee can be allowed under the law to have no inducement to neglect the interest of his ward." *Id*. By opening the joint account with rights of survivorship, Vandevort created an inducement to refrain from spending money on Smith's care. For our present purposes, the issue is the existence of the inducement – not whether Vandevort actually neglected Smith's needs. "[A] person with a conflict of interest cannot serve as conservator of the estate." *In re Conservatorship of Cole*, 958 So. 2d 276, 280 (¶12) (Miss. Ct. App. 2007). "[I]f a conflict exists, the fiduciary has a duty to refuse the trust, resign, or remove the conflicting personal interest." *Jackson v. Jackson*, 732 So. 2d 916, 921 (¶7) (Miss 1999). It is true that "ownership of a joint tenancy is not necessarily inconsistent with trusteeship." *Estate of Bodman v. Bodman*, 674 So. 2d 1245, 1250 (Miss. 1996). But *Bodman* involved a joint tenancy that the ward had created before his daughter successfully requested to be appointed as his conservator. *Id*. at 1246-47.

---

estate, and the other case focuses on his obligation to collect it. "[W]hen indicia of fraudulent activity are present, there is no legal barrier preventing a chancellor, clothed with the powers of equity, from reopening a closed estate and demanding a fiduciary to produce evidence in an effort to disprove maladministration." *In re Estate of Carter*, 912 So. 2d 138, 147 (¶29) (Miss. 2005).

14

Here, Vandevort created the joint tenancy *after* being appointed as Smith's conservator, and he did so without obtaining the chancellor's advance permission.

¶26. Vandevort also takes the position that he was not required to transfer the represented balance of Smith's checking account to her estate because the entire balance had already "vested in him immediately." This position relies on the incorrect premises that he could open an unapproved joint account with rights of survivorship, neglect his obligation to report his clear conflict of interest, withdraw Smith's money from her account without the chancellor's leave, file a misleading final accounting of Smith's assets that was inaccurate on the date that it was presented to the chancellor,[13] and neglect the clear language in the chancellor's order. "The closing of an estate . . . is not a license for a [fiduciary] to rob the coffers of the dead." *Carter*, 912 So. 2d at 147 (¶29).

¶27. More significantly, the chancellor unequivocally ordered Vandevort to transfer Smith's assets to her estate. "[T]he chancellor . . . has the power and the duty, both inherent and by statute, to coerce obedience to [his] orders[.]" *Dewitt v. De Baun*, 172 Miss. 113, 117, 159 So. 552, 553 (1935). In *Dewitt*, a chancellor ordered the administrator of an estate to pay money to settle a claim against the estate. *Id*. at 115, 159 So. at 552. "[I]t was [the administrator's] duty either to obey [the order] or . . . petition to set it aside . . . . But instead of doing this, the administrator simply ignored [it]." *Id*. at 117-18, 159 So. at 553. Our Supreme Court held:

---

[13] Until discharged by the court, a guardian has a continuing duty to account for the ward's assets. *U.S. Fid. & Guar. Co. v. Conservatorship of Melson*, 809 So. 2d 647, 654 (¶31) (Miss. 2002).

> [W]hen a party to any chancery cause . . . has been required to pay money under an order of the . . . chancellor, . . . and the party has legal or equitable reasons [that] . . . would excuse compliance with the order, . . . these facts and reasons should with reasonable promptitude be made known to the court by the party so ordered, and not wait until he has been cited for contempt. And if he does not take the reasonable course first mentioned, he will be required to make a particularly clear case in defense of [a contempt] petition . . . .

*Id*.

¶28.   Vandevort also prematurely concludes that his status as the sole beneficiary of Smith's estate is a given. Fitzmaurice's will contest is still pending. "Mere anticipation does not guarantee that [Vandevort] will be able to maintain [his] interest." *Davis*, 954 So. 2d at 525 (¶17). The orderly progression of Smith's assets from her conservatorship through her estate is not an empty ritual; nor can it be circumvented by her conservator's unapproved financial maneuvering. Taken as true, Fitzmaurice's allegations are viable causes of action. The chancellor erred when he dismissed Fitzmaurice's contempt petition as untimely and on the basis that she failed to state a claim upon which relief can be granted. Consequently, we reverse the chancellor's judgment and remand the case to the chancery court.

> **II.    The order staying the contempt petition that Fitzmaurice filed in Smith's estate is not a final judgment.**

¶29.   Fitzmaurice argues that the chancellor should not have stayed this contempt petition until after resolving her claim that Smith's will was invalid. "As a general rule, only final judgments are appealable." *In re Estate of Lewis*, 135 So. 3d 202, 205 (¶14) (Miss. Ct. App. 2014). "A final, appealable judgment is one that adjudicates the merits of the controversy and settles all issues as to all the parties and requires no further action by the trial court." *Id*. "When all the issues in a case or claims against all the parties are not resolved in a judgment,

16

no appeal of right can be taken." *Id*. The chancellor did not certify the judgment as final, and Fitzmaurice did not obtain the Supreme Court's permission to file an interlocutory appeal. *See* M.R.C.P. 54(b); M.R.A.P. 5. As a result, we must dismiss this portion of the consolidated appeal for lack of jurisdiction. *Lewis*, 135 So. 3d at 206 (¶16). Therefore we do not comment on Smith's ability to execute a will while possibly suffering from dementia, or the allegation that Vandevort, the sole beneficiary of the will drafted by the attorney for the conservatorship and the estate, possibly overreached in violation of the fiduciary duties that he owed Smith as her conservator.

## CONCLUSION

¶30. The chancellor erred when he found that the contempt petition that Fitzmaurice filed in Smith's conservatorship was barred by the statute of limitations applicable to actions to reopen an accounting. The chancellor also erred when he granted Vandevort's motion to dismiss that contempt petition on the basis that Fitzmaurice failed to state a claim upon which relief may be granted when it was undisputed that Vandevort disregarded the chancellor's order to transfer *all* of Smith's assets no matter how they were titled, including the balance of Smith's checking account as represented in the final conservatorship accounting, to Smith's estate. We reverse the chancellor's judgment in case number 2015-CA-01798-COA and remand that case for further proceedings. However, the chancellor's order staying the contempt petition that Fitzmaurice filed in Smith's estate in case number 2016-CA-00504-COA is not a final judgment. As a result, we must dismiss that appeal for lack of jurisdiction.

17

¶31.   **REVERSED AND REMANDED IN PART; APPEAL DISMISSED IN PART.**

**LEE, C.J., IRVING, P.J., ISHEE, CARLTON AND WESTBROOKS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND FAIR, J.**

**WILSON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶32.   I concur in Part II of the majority opinion, which holds that we lack jurisdiction of Constance Fitzmaurice's appeal from a non-final order in the estate case. However, I dissent as to Part I of the majority opinion, as I would affirm the chancellor's ruling that Fitzmaurice's petition for contempt in the conservatorship case was barred by Mississippi Code Annotated section 91-7-309.

¶33.   The essential facts relevant to this appeal are not especially complicated. Charles Vandevort was appointed as Margarette Smith's conservator. Smith died in November 2010, and in July 2011 the chancery court entered an order approving Vandevort's final accounting, discharging Vandevort as conservator, and closing the conservatorship. The order directed that Smith's remaining assets be transferred to her estate.

¶34.   Vandevort is also the sole beneficiary and executor under Smith's will. In January 2011, Smith's will was admitted to probate, and letters testamentary were issued to Vandevort. In July 2011, Fitzmaurice filed a complaint to set aside the will, although, as the majority notes, the complaint is not included in the record.[14]

---

[14] The complaint is not in the record because Fitzmaurice's designation of the record on appeal excluded any pleadings, transcripts, or other papers filed prior to her October 2013 contempt petitions. In addition, the chancery clerk did not include docket entries in the estate case that predate the chancery court's conversion to electronic filing in 2013.

18

¶35. In October 2013, Fitzmaurice filed a "Petition for Citation of Contempt" in the conservatorship case. She alleged that Vandevort violated his fiduciary duty to Smith by, inter alia, placing Smith's funds in a joint account that he co-owned with survivorship rights and then by withdrawing and keeping the funds for himself after Smith died. The record on appeal does not indicate why Fitzmaurice filed a complaint to set aside Smith's will in 2011 but waited another two-plus years to file her contempt petition.

¶36. The chancellor dismissed Fitzmaurice's contempt petition as untimely. The chancellor's ruling was correct and should be affirmed because a petition to reopen a conservatorship to "surcharge and falsify" the conservator's final account must be filed within two years of final settlement of the conservatorship. Miss. Code Ann. § 91-7-309. Fitzmaurice's petition was filed after this two-year period had expired.

¶37. Fitzmaurice's argument as to why the two-year limitation period of section 91-7-309 does not apply to her petition has two general themes: (1) her contempt petition is actually a claim "founded on a judgment," which is subject to a seven-year statute of limitations, *see* Miss. Code Ann. § 15-1-43; and (2) she has "never challenged an account or accounting" and "is not attempting to reopen any . . . conservatorship or any accounting thereof. Neither contention has merit.

¶38. With respect to the first point, Fitzmaurice contends that her petition is really a suit on a "judgment"—namely, the order closing the conservatorship and directing the transfer of its assets to the estate. In her opening brief on appeal, Fitzmaurice repeatedly asserts that "*as the current executor/administrator [of Smith's estate]*," she "is a judgment creditor" and,

as such, is "owed" funds that should have been transferred to the estate. Appellant's Br. 12 (emphasis added); *see also id.* at 18 & 24 (repeating the same argument).

¶39. However, at least according to the record on appeal, this argument is simply wrong on the facts. Fitzmaurice is *not* the "current executor/administrator" of Smith's estate. The chancery court issued letters testamentary to *Vandevort*, and there is nothing in our record to indicate that he has ever been removed as executor. Fitzmaurice is not a beneficiary under Smith's will, and at present her only connection to Smith's estate is that she is contesting Smith's will. As such, Fitzmaurice clearly is not a "judgment creditor" with respect to the final order closing the conservatorship and directing a transfer of assets to the estate.

¶40. In her reply brief, Fitzmaurice seems to recognize her error and shifts her focus to Mississippi Code Annotated section 91-7-285, which provides that if a conservator fails to perform any duty required by law or court order, the court may, "on the application of any interested party," punish the conservator for contempt, remove the conservator, or both. Fitzmaurice contends that she is an "interested party" because she is Smith's heir at law.

¶41. However, assuming that Fitzmaurice is an "interested party,"[15] that does not mean that

---

[15] Our Supreme Court has held that an "interested party" is "a person who has a legitimate interest present or prospective in that estate, or who has some personal responsibility as regards the estate." *In re Conservatorship of Davis*, 954 So. 2d 521, 525 (¶14) (Miss. Ct. App. 2007) (quoting *In re Conservatorship of Harris v. King*, 480 So. 2d 1131, 1132 (Miss. 1985); *Barney v. Barney*, 203 Miss. 228, 230, 33 So. 2d 823, 824 (1948)). In *Davis*, this Court reasoned that a "prospective" interest is an interest that is "anticipated or expected" or "likely to come about." *Davis*, 954 So. 2d at 525 (¶14) (quoting *Black's Law Dictionary* 1238 (7th ed. 1999)). This Court then held that the petitioner was "interested" in the conservatorship because his minor daughters were the sole beneficiaries in the ward's will and thus had an "anticipated or expected interest" in the estate. *Id.* at (¶¶15-16). Here, in contrast, the ward is already deceased, and Fitzmaurice is *not* a beneficiary under her will and has no interest in the estate unless she first prevails in her will

20

her contempt petition was timely. Section 91-7-285 authorizes an interested party to file a contempt petition, but it does not override section 91-7-309 and permit the filing of such a petition more than two years after the final accounting and termination of the conservatorship. Stated differently, section 91-7-285 does not give anyone a perpetual right to file contempt petitions. Rather, "[a]ny person interested may" file such a petition "within two years after final settlement." Miss. Code Ann. § 91-7-309.

¶42. At its core, Fitzmaurice's argument is that her contempt petition is like a chameleon, and (1) we must accept it as a contempt petition so that she can claim standing under section 91-7-285, but then (2) we must pivot and treat it as an independent "action[] founded on a judgment" so that she may benefit from the seven-year statute of limitations found in section 15-1-43. However, because Fitzmaurice is not the executor of the estate, she lacks standing to bring an action founded on a judgment in favor of the estate. Therefore, her contempt petition is just that—a contempt petition. And it is untimely under section 91-7-309.[16]

¶43. As noted above, a second theme of Fitzmaurice's argument is that she "never

contest. Therefore, at this stage of the proceedings, it is speculative to say that Fitzmaurice's interest in the estate is "anticipated or expected" or "likely to come about." Nonetheless, I assume for purposes of this opinion that Fitzmaurice is as an interested party under the statute.

[16] The majority also concludes that Fitzmaurice's claim may be treated like an independent claim for breach of fiduciary duty, which is subject to the three-year statute of limitations. *See ante* at (¶22). The majority raises this issue, although it notes that "[n]either the chancellor nor either of the parties discussed the application of the three-year 'catch-all' statute of limitations." *Id.* The three-year statute of limitations is inapplicable for essentially the same reasons that section 15-1-43 does not apply: Fitzmaurice lacks standing to bring an independent breach of fiduciary duty claim on behalf of the estate. Therefore, her claim can only be treated as a contempt petition, not an independent tort claim. And her contempt petition is untimely under section 91-7-309.

21

challenged any account or accounting" and "is not attempting to reopen any . . . conservatorship or any accounting thereof." Appellant's Br. 7, 9, 16, 50. Her argument seems to be that section 91-7-309 does not apply at all unless a party's claim is specifically and narrowly limited to allegations of accounting errors. Fitzmaurice contends that her petition only seeks compliance with court orders and alleges that the conservator breached his fiduciary duties, so section 91-7-309 "is wholly inapplicable." Appellant's Br. 14, 50. This argument both ignores the substance of Fitzmaurice's petition and interprets section 91-7-309 far too narrowly.

¶44. As to the substance of Fitzmaurice's claim, in her motion for reconsideration in the chancery court, she clearly argued that Vandevort "procured an order" closing the conservatorship by presenting a "final accounting" that knowingly "[mis]represented [that] converted funds were still in the conservatorship." This is *exactly* the sort of claim that section 91-7-309 describes: "Any person interested may, at any time within two years after final settlement, by bill or petition, open the account of any executor, administrator, or guardian and surcharge and falsify the same, and not after . . . ." The basic premise of Fitzmaurice's claim is that Vandevort's final accounting was false because he had already wrongfully converted funds that he continued to show as assets of the conservatorship.

¶45. Moreover, the plain language of section 91-7-309 is not limited to narrow allegations of accounting errors or inaccuracies. The most relevant definition of "surcharge" is "to impose a fine on a fiduciary for breach of a fiduciary duty." *Black's Law Dictionary* 1579 (9th ed. 2009). This is the gravamen of Fitzmaurice's contempt petition—that Vandevort

22

should be found in contempt based on alleged breaches of his fiduciary duties to Smith.

¶46. Finally, although Fitzmaurice claims that she is "not attempting to reopen any . . . conservatorship" (Appellant's Br. 16), she fails to explain how she can obtain relief in a case that remains closed. She filed her contempt petition in a conservatorship proceeding that had been closed for more than two years. As a logical matter, the court cannot grant relief on Fitzmaurice's petition without first reopening the conservatorship. Section 91-7-309 provides a mechanism for reopening a conservatorship, but it is unavailable more than two years after the conservatorship was terminated.

¶47. In summary, Fitzmaurice does not have standing to sue on behalf of the estate. She is not the executor of the estate, and at present her only connection to the estate is as a contestant to the deceased's will. Therefore, she clearly lacks standing to bring an action "founded on a judgment" in favor of the estate. The petition for contempt that she filed in the conservatorship proceeding was just that—a petition for contempt. And it was untimely because it was filed more than two years after the final accounting and termination of the conservatorship. Miss. Code Ann. § 91-7-309. The chancellor correctly dismissed the petition for this reason, and his ruling should be affirmed.[17]

**GRIFFIS, P.J., AND FAIR, J., JOIN THIS OPINION.**

---

[17] To the extent that it is a cause for concern, affirmance of the chancellor's order dismissing Fitzmaurice's contempt petition would not prevent recourse against Vandevort for any provable wrongdoing. Although the record on appeal is limited, Fitzmaurice appears to be Smith's sole heir at law. Thus, if Fitzmaurice prevails on her pending complaint to set aside Smith's will, she presumably would be appointed as the administrator of Smith's estate, at which point she would be a proper party to pursue whatever claims the estate may have against Vandevort. *See* Miss. Code Ann. §§ 91-7-63 & -233 (Rev. 2013).