BROOM, Justice, for the Court:
Divorce and other relief were sought by cross-appellee, Roscoe F. Moore (Mr. Moore herein), by his original bill of complaint against cross-appellant, Jackie B. Moore (Mrs. Moore herein), in the Chancery Court of Forrest County, Mississippi. Mrs. Moore denied Mr. Moore’s charge of habitual cruel and inhuman treatment, and successfully sought a divorce herself on that ground. *287 She also sought certain property rights. Both parties appealed to this Court from the final decree entered below, but Mr. Moore’s appeal was dismissed on his motion, leaving only Mrs. Moore’s cross-appeal before us.
The final decree awarded Mrs. Moore (1) a divorce, (2) $9,596.92 as temporary alimony for the period of September 16, 1976 to March 16, 1977, (3) an additional sum of $9,680.92 representing Mrs. Moore’s original investment in the parties’ joint adventure of buying and selling oil and gas interests, et cetera, plus $276.88, or half the profits, (4) $1,500 solicitors’ fees, and (5) an automobile. In her cross-appeal Mrs. Moore argues that the chancellor erred by failing to grant her (1) permanent alimony, (2) ownership of certain municipal bonds her husband bought in her name, and (3) an equitable division of the joint adventure which the court found to exist between the parties. Mr. Moore having dismissed his appeal, only the legal propositions raised by Mrs. Moore’s cross-appeal remain here for decision. Facts will be set forth where appropriate to this opinion.
DID THE LOWER COURT COMMIT REVERSIBLE ERROR IN NOT ALLOWING MRS. MOORE PERMANENT ALIMONY? Facts of the case show that the parties were married October 19, 1974, and lived together until September 20,1976, the date of their separation. The parties were middle-aged people, both with adult children by their respective prior marriages. Mrs. Moore, at the time of the marriage of the litigants, quit her job as office manager of W. T. Grant Company in Hattiesburg, where she earned about $175 per week. According to her, the marriage to Mr. Moore was “a beautiful 23 months together,” and their separation came about largely as a result of (1) his wanting “the bonds that he had said would be mine if he died,” and (2) his “deception” concerning their going into the oil business: “We had a verbal agreement . . . that either of us would put in whatever funds we had . all of mine and ... all of his.”
The decree awarded Mrs. Moore the $9,596.92 as temporary alimony and support from the date of the separation on September 20, 1976, until the date of this decree, which the court felt adequate to support her in the manner in which she had become accustomed during her marriage to Mr. Moore. Additionally, the decree provided that due to the fact that Mrs. Moore “has had ample time to secure new employment since the separation, and taking into consideration the short term of the marriage, no further alimony or support should be awarded” to her.
Citing no authority directly in point, Mrs. Moore argues that the chancellor’s failure to award permanent alimony requires reversal of his decree. Her cross-bill sought suit money but made no averment pertaining to or prayer for permanent or temporary alimony. It does not aver that she is entitled to alimony, and her prayer does not contain the word “alimony” or any word of similar import. No argument is advanced that she should be awarded further alimony on account of her physical disability, inability to work, or illness. Indeed none of the pleadings or testimony indicate that she is sick or suffers any physical impairment. We cannot say that the learned chancellor erred as to the question of alimony upon the state of the record and proof. Pursuant to Horton v. Horton, 269 So.2d 347 (Miss.1972) the chancellor has considerable discretion in allowing or not allowing permanent alimony, and his beneficence in granting her temporary alimony not sought in her pleadings cannot be reversible error as to her.
We have considered Mrs. Moore’s argument that THE TRIAL COURT ERRED IN NOT DECREEING THAT SHE WAS THE SOLE AND UNDISPUTED OWNER OF CERTAIN BONDS and find it to be without merit. There was considerable conflict in the testimony regarding the circumstances surrounding the purchase of these bonds. Mrs. Moore’s version is that she and Mr. Moore had a previous agreement that a “certain dollar amount of bonds would be kept in our joint lock box. *288 These were to be kept at my disposal in case something happened to Roscoe, well that he died, that I would have funds to sustain me until the estate was settled. This was an agreement — a mutual agreement between Roscoe and me. . . . ”
“It was not in writing. This was a verbal agreement between Roscoe and I (sic).”
Mr. Moore’s version of the transaction and agreement was somewhat different. According to him, there was an understanding that he would be reimbursed after she had received some income from real estate in Florida.
Q. And that was bought in her name in the amount of $15,000.00 Gulf Coast Water Disposal Authority 9V2 percent at par. Do you recall that transaction?
A. She needs to explain this. I can’t explain it.
Q. You don’t know anything about that transaction?
A. Yes. I know something about it.
Q. Well what is it you know about it?
A. You see these are confirmations, and a lots of times they’d confirm them in one name and then somebody’s else’s funds would pay for it. And Jackie was anticipating of using her Treasury bill money and these were billed out and she never did get the money because we never did take them out. Let me clarify a little further. Jackie explained that she owned some real estate in Florida and was anticipating a sale in which she would have funds. But she didn’t have the funds and it was my funds or the children’s funds that paid for it.
It is undisputed that the bonds were purchased with Roscoe Moore’s money (or his children’s), but Mrs. Moore argues that “the fact that the bonds referred to . are actually bought in cross-appellant’s name must give rise to the presumption that they were bought for her account and that ownership of them vested in the cross-appellant.” This is inconsistent with her testimony, which was to the effect that she was to receive ownership of these bonds only in the event of Mr. Moore’s death. Had the bonds been delivered to her in her full possession, her testimony quoted supra would negate any conclusion that the bonds were an inter vivos gift. According to the record, the bonds were not literally bought in any particular person’s name but the purchase confirmations were in the name of Mrs. Moore. Significant as to this proposition is the fact that the bonds in question were kept in a safety deposit box jointly maintained by the parties. Roscoe himself went and removed these bonds from the box after the parties became involved in the dispute over disposition of the bonds. Obvious from these facts is the inescapable conclusion that Roscoe retained some element of control over the bonds according to the testimony of Mrs. Moore. We held in Yates Estate v. Alabama-Mississippi Conference Ass’n of Seventh-Day Adventists, 179 Miss. 642, 176 So. 534 (1937) that:
[0]ne of the essentials of a valid gift causa mortis, as well as a gift inter vivos, is that the property must be delivered in such manner that the donor retains no control or dominion over it.
With the record clearly showing that Mr. Moore retained control and dominion over the bonds to the extent that he could remove them from the box at any time, we cannot say that the chancellor erred by his failure to decree thrt Mrs. Moore owned the bonds which in actuality appear to be “bearer” bonds.
DID THE COURT, HAVING FOUND THAT A JOINT ADVENTURE EXISTED, ERR IN NOT REQUIRING A FULL AND COMPLETE ACCOUNTING, INCLUDING THE CASH TRANSACTIONS, AND IN FAILING TO RECOGNIZE THE BENEFICIAL OWNERSHIP OF JACKIE B. MOORE IN THE INVENTORY OF THE JOINT ADVENTURE? We find it unnecessary to deal with this question on the merits because this question was not raised in Mrs. Moore’s original assignment of errors. When she filed her original assignment of errors and brief, Mr. Moore moved to strike the assignment and *289 brief and require her to abstract and brief the case in conformity with Rule 41 of this Court. She then complied with Rule 41 in her redrafted abstract and brief, but then raised this question, which is a third assignment of error not set forth in her original assignment of errors. Our opinion is that we allowed her to amend her brief and abstract, but we did not give her any authority to include the third (additional) assignment of error and, therefore, Mr. Moore’s motion to strike this proposition from the case is sustained. Regardless of our action on the motion to strike, there is no merit to the argument of Mrs. Moore as to this aspect of the case.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and WALKER, LEE, BOWLING and COFER, JJ., concur.
SUGG, J., took no part.