# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00760-COA

CHERYL BURRELL                                                        APPELLANT

v.

GEOFFREY BURRELL                                                     APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2018 |
| TRIAL JUDGE: | HON. M. RONALD DOLEAC |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ANNA MARIE CHANDLER |
| ATTORNEY FOR APPELLEE: | BRANDON LARUE BROOKS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 01/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     On or about January 26, 2017, Cheryl Burrell filed a "Complaint for Divorce and Temporary Relief" in the Chancery Court of Lamar County; the chancellor entered a temporary order on May 16, 2017.  Geoffrey Burrell filed his initial answer to Cheryl's complaint on February 28, 2018, and a subsequent amended answer on March 1, 2018.  The matter proceeded to trial on March 7, 2018, and the court entered an opinion and final judgment granting an unequal distribution of the marital assets favoring Cheryl on March 16, 2018; Cheryl was granted use and possession of the marital home pending sale, half of Geoffrey's retirement account, reimbursement for dissipated marital funds, and the majority of the couple's marital assets.  Geoffrey was ordered to assume sole liability for the  marital

debts, including the ongoing mortgage note, but, the court found that Cheryl was not entitled to spousal or child support. Four days later, Cheryl moved for reconsideration of the court's final judgment and argued that court's failure to award her the marital home and support payments for the benefit of their disabled son was inequitable. Geoffrey filed a corresponding response on April 30, 2018. The court held a hearing on May 1, 2018, and entered an order denying Cheryl's motion on May 23, 2018. Aggrieved, Cheryl now appeals.

## FACTS AND PROCEDURAL HISTORY

¶2. Cheryl filed her complaint for divorce and temporary relief against Geoffrey on January 26, 2017, after twenty-six years of marriage. Cheryl sought a divorce on the grounds of habitual cruel and inhuman treatment, adultery, and, alternatively, irreconcilable differences. The parties have one child, John, who is an adult. Cheryl alleged in her complaint that John was disabled.[1] Cheryl requested the court to award her child support for John and ownership of all household furnishings. She asked the court to require Geoffrey to replace all destroyed, damaged, or worn furniture and to be responsible for the repayment of all marital debt. Cheryl also sought sole and exclusive use of the marital home; an injunction against Geoffrey from interfering with the peaceful enjoyment of her life; and "general relief." Notably, Cheryl did not request alimony or spousal support.

¶3. On May 16, 2017, the court entered a temporary order, granting Cheryl temporary possession and use of the marital residence. Geoffrey was directed to continue to pay the

---

[1] Neither party actually describes the nature or name of John's disability in the record or the briefs on appeal.

mortgage note and utility costs for the marital residence and temporary spousal support to Cheryl.[2] The order also prohibited the parties from disposing of any assets without a court order.

¶4. Geoffrey filed his answer and a counter-complaint for divorce and other relief on February 2, 2018, requesting an equitable distribution of the marital estate. He amended the filing on March 1, 2018, but requested the same relief.

¶5. Geoffrey stipulated to his adulterous conduct as the ground for divorce and admitted on the record that he wired his mistress "a few hundred dollars" after the death of her husband. The issues at trial were limited to custody and support of John; replacement, use, and ownership of household furnishings and the marital residence; payment of marital debt; and equitable distribution of the marital estate.

¶6. At trial, Geoffrey testified that several years earlier he and Cheryl filed bankruptcy because despite his working two jobs, they could not overcome their debt. After completing the bankruptcy, the Burrells only remaining debt was the mortgage on the marital residence. Geoffrey testified that since his and Cheryl's separation, he had moved in with his parents in Slidell, Louisiana, and was commuting eighty-five miles (one-way) to work at Forrest General Hospital in Hattiesburg, Mississippi. Geoffrey denied causing damage to any furniture in the marital house; John testified to the same, and Cheryl did not produce any evidence of the alleged damage.

---

[2] In its "Opinion and Final Judgment" the chancery court determined the support was temporary in nature and did not necessitate adjustments for the final equitable distribution of the marital estate.

¶7.     Cheryl disclosed that she received approximately $100,000 as an inheritance from her father but testified that she had spent a large portion of the funds on alternative medicines and other miscellaneous home expenses.[3]  She also admitted that she sold $20,000 worth of jewelry, in violation of the court's temporary order, to supplement her income after expending all of the money from her inheritance.[4]  Cheryl testified that during the marriage, she stayed home due to her fibromyalgia and to take care of John, who is permanently disabled and requires her perpetual care.  However, she also testified that she had held a variety of jobs over the years.  Geoffrey testified that John would sleep all day and stay up all night.  He explained that Cheryl would sometimes work day jobs or run errands and was able to leave John at home alone without issue.

¶8.     As income, John receives monthly benefits from the Social Security Administration.  At the time of trial, John was not under the administration of a guardianship or conservatorship, and Cheryl testified that he had his own checking account and that "no one else could have their name on it except for him."  Prior to his parent's separation, John paid a monthly amount of $450 to his parents for rent, food, and utilities; following the separation, he continued to make the payments to Cheryl.

---

[3] Cheryl was seemingly confused about the amount of money she received from the administration of her father's estate. She testified that she received about $100,000. However, the final order in those proceedings shows the *entire* estate to be worth about $100,000. After paying attorneys, being paid as the executrix, and dividing the remaining proceeds among all her father's children, Cheryl likely inherited less than $50,000.

[4] The court's temporary order entered on May 16, 2017, expressly prohibited Cheryl and Geoffrey from "the disposal of assets" and the incurring of joint debt.

¶9. After considering the evidence, the court divided the marital estate as follows: Geoffrey was ordered to pay the mortgage note on the marital residence until the property sold while Cheryl maintained exclusive use. Any remaining equity after the home sold was to be divided equally between the parties. The court noted that Cheryl failed to request permanent alimony or spousal support in any of her pleadings. The court further explained that any relief not requested could not be granted and therefore deemed an analysis under *Armstrong*[5] and *Cheatham*[6] unnecessary.

¶10. Regarding John, the court noted that he was not a minor; not a party to the suit; not adjudicated as a vulnerable adult; not under any guardianship or conservatorship; and was receiving Social Security benefits. The court determined it had no jurisdiction to order child support be paid for his benefit.

¶11. Cheryl filed a "Rule 59 Motion to Reconsider, Clarify Judgment, and Other Relief" on March 22, 2018. In the motion, Cheryl argued that she was entitled to an alimony award and that the court's failure to apply the *Armstrong* and *Cheatham* factors deprived her of necessary spousal support and resulted in an inequitable ruling. Cheryl again cited John's disability as a basis for her support request, noting that it would be inequitable to place the entire financial burden on her.

---

[5] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280-81 (Miss. 1993) (prescribing factors to be considered by the court when determining the propriety of periodic, or permanent, alimony).

[6] *Cheatham v. Cheatham*, 537 So. 2d 435,438 (Miss. 1988) (setting forth factors for the court to consider in determining the grant of lump-sum alimony).

¶12. Cheryl did not formally request alimony or spousal support in her divorce petition, nor did she request leave to amend her complaint to reflect an alimony request. In his response, Geoffrey asked the court to deny Cheryl's motion and argued that the court had addressed all of the arguments and evidence presented at trial in its thirty-four page "Opinion and Final Judgment." He claimed that Cheryl's motion failed to identify an intervening change in controlling law; the availability of new evidence not previously available; or any need to correct an error to prevent a manifest injustice. The court denied the motion and deemed its March 16, 2018 opinion as the final judgment in an order entered on May 23, 2018. Aggrieved, Cheryl now appeals.

## STANDARD OF REVIEW

¶13. "When reviewing a decision of a chancellor, this Court applies a limited abuse of discretion standard of review." *Mabus v. Mabus*, 890 So. 2d 806, 810 (¶14) (Miss. 2003) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (¶21) (Miss. 2000)). "This Court will not disturb the findings of a chancellor 'unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard.'" *Id.* However, for questions of law, the standard of review is de novo. *Townsend v. Townsend*, 859 So. 2d 370, 372 (¶7) (Miss. 2003).

## DISCUSSION

I. **Whether the trial court erred in granting Geoffrey's request for equitable division of the marital estate.**

¶14. Cheryl argues that due to her age, health, and Geoffrey's admission of adultery (and

in light of the *Armstrong* [7] and *Cheatham*[8] factors), she is entitled to permanent alimony and should have been awarded the marital residence. Though not requested in her complaint, Cheryl claims to have made an ore tenus request for spousal support, which she contends the court granted. Cheryl assigns error to the trial court for not applying the *Armstrong* and *Cheatham* factors in making its ruling.

¶15. Geoffrey argues that because Cheryl never requested equal or disproportionate distribution of the marital estate, permanent alimony, or spousal support in her pleadings, the court could not grant the relief. Geoffrey, however, did plead for an equitable distribution of the marital estate, which the court granted. Geoffrey further argues that the

---

[7] The *Armstrong* factors include:

> (1) the income and expenses of the parties; (2) the health and earning capacity of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be just and equitable in connection with the setting of spousal support.

*Armstrong*, 618 So. 2d at 1280 (citing *Hammonds v. Hammonds*, 597 So. 2d 653, 655 (Miss. 1992)).

[8] The *Cheatham* factors include: "1) [s]ubstantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business; 2) [a] long marriage; 3) [whether] recipient spouse has no separate income or separate estate is meager by comparison; [and] 4) [whether] [w]ithout the lump sum award the receiving spouse would lack any financial security." *Cheatham*, 537 So. 2d at 438 (citations omitted).

7

court did not err in refusing to perform an *Armstrong* or *Cheatham* analysis because neither was necessary in light of Cheryl's non-inclusive pleading.

¶16.    In *Moore v. Moore*, 363 So. 2d 286, 287 (Miss. 1978), the Mississippi Supreme Court rejected Mrs. Moore's argument for reversal of a chancellor's decree that did not include an award for permanent alimony.  The Supreme Court noted that although Mrs. Moore had been granted temporary alimony, she had "made no averment pertaining to or prayer for permanent or temporary alimony." *Id.*  Citing *Horton v. Horton*, 269 So. 2d 347 (Miss. 1972), the Mississippi Supreme Court held that "the chancellor has considerable discretion in allowing or not allowing permanent alimony, and his beneficence in granting her temporary alimony not sought in her pleadings cannot be reversible error as to her." *Moore*, 363 So. 2d at 287.

¶17.    Like Mrs. Moore, the record before us does not reflect any request by Cheryl, ore tenus or written, for permanent alimony or spousal support.  Even Cheryl's own pleading for reconsideration does not list alimony or spousal support as one of the issues at trial.  Notwithstanding the omission, the court did grant Cheryl temporary spousal support in its temporary order.  However, as its name suggests, the court's grant of spousal support was temporary and does not entitle Cheryl to continued support.

¶18.    Cheryl never requested leave to amend her complaint to include a request for alimony or spousal support.  No such leave was granted, and no amendment was ever made.  Thus, Cheryl was not entitled to permanent alimony or spousal support.  Accordingly, we find no error with the chancery court's decision to deny reconsideration of the award to Cheryl.

**II.** **Whether the trial court erred by not awarding Cheryl child support and the permanent use and possession of the marital residence for the benefit of their adult son, John.**

¶19.    In her next assignment of error, Cheryl argues that John is disabled; cannot care for himself; requires substantial assistance; and has never resided on his own. As such, she maintains that it would be inequitable to place the entire responsibility on her. Cheryl further argues that child support is necessary for John's care, and she asserts that the *Ferguson*[9] and *Armstrong* factors entitle her to child support and the marital residence. In his reply brief, Geoffrey failed to address to any of Cheryl's arguments on the issue of support for John.

### A.    Child Support

¶20.    This Court has held that "[a] parent has no statutory or common-law duty to support a child who has reached the age of majority." *Archie v. Archie*, 126 So. 3d 937, 942 (¶14) (Miss. Ct. App. 2013) (citing *Hays v. Alexander*, 114 So. 3d 704, 707 (¶12) (Miss. 2013)). "Legally, a parent is relieved of the duty to support his child once the child is emancipated whether by attaining the age of majority or otherwise." *Id.* (quoting *Meek v. Warren*, 726 So. 2d 1292, 1293 (¶2) (Miss. Ct. App. 1998)); *see also Nichols v. Tedder*, 547 So. 2d 766, 770 (Miss. 1989)).

¶21.    The Court noted John's status as an emancipated adult who receives monthly Social Security benefits. Regardless of any disability, though, John was not a party to the divorce

---

[9] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994) (enumerates factors for courts to employ "when attempting to effect an equitable division of marital property").

proceedings and at the time of trial he was not under the administration of a guardianship or conservatorship in any court.[10] Thus, he was not considered in the chancellor's distribution analysis, and this issue is without merit.

### B. Marital Residence

¶22. "The [c]hancery [c]ourt has authority, where equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties, and the equitable division is left to the chancellor's discretion unless there is an abuse of discretion." *Berryman v. Berryman*, 907 So. 2d 944, 947-48 (¶14) (Miss. 2005).

¶23. Reviewing the record, we find no abuse of discretion in the chancery court's decision to order the sale of the marital home and the equal division of any remaining equity. Despite Cheryl's violation of the court's temporary order,[11] she was awarded fifty percent of any proceeds from the sale of the home, fifty percent of Geoffrey's retirement, and the majority of the couple's personal property. Cheryl was also allowed to remain in possession of the home with Geoffrey retaining responsibility for the ongoing mortgage payments. Cheryl

---

[10] We note that in certain circumstances a parent might be responsible for the support of an adult child. In *Ravenstein v. Ravenstein*, 167 So. 3d 210, 213 (¶1) (Miss. 2014), the Mississippi Supreme Court upheld a chancellor's denial of a father's motion to modify and terminate support for his adult son. Easily distinguishable from the current case, the court had appointed a conservator for Ravenstein's son, citing his physical and mental incapacity to care for himself; Ravenstein agreed that the conservatorship was necessary. *Id.* at 219 (¶19). Also, Ravenstein had already been ordered to pay child support for his son's lifetime (when the child was still a minor) in a prior divorce judgement. *Id.* at (¶18). The Court found that no unanticipated material change had occurred since the initial judgement and that modification was not warranted. *Id.* at (¶19).

[11] Cheryl admittedly sold assets (jewelry) valued at approximately $20,000 in violation of the court's temporary order.

claims that due to fibromyalgia, she lacks the ability to maintain employment, but no expert testimony was presented to substantiate the assertion. In fact, Cheryl testified that she had worked several jobs outside of the home.

¶24. Accordingly, we find that the court's denial of Cheryl's request for reconsideration of child support and the use of the home for John's benefit was consistent with the law and well within its discretion.

¶25. For the reasons stated above, we find no error and affirm the chancery court's judgment and denial of Cheryl's motion requesting reconsideration.

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**